IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br>v.<br><br>ANTON PERAIRE-BUENO, and JAMES PERAIRE-BUENO,<br><br>    Defendants. | Case No.: 1:24-cr-00293-JGLC<br><br>**FILED PARTIALLY UNDER SEAL** |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ISSUANCE OF PRETRIAL RETURN SUBPOENA TO ▬▬▬▬▬▬▬ PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 17**

Pursuant to Federal Rule of Criminal Procedure 17(c)(1), Defendants Anton and James Peraire-Bueno respectfully request that the Court authorize the issuance of a subpoena to ▬▬▬▬▬ ▬▬▬▬▬ requiring the production of documents pretrial. The proposed subpoena and its referenced appendices are attached as Exhibit 1. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬. The proposed subpoena requests specific, relevant, and potentially admissible documents. The Peraire-Buenos request that the Court authorize a return date of July 1, 2025, so that any documents are received in advance of their expert disclosure deadline.

**I.  BACKGROUND**

As explained in greater detail in the Peraire-Buenos' Motions to Dismiss and other Motions filed concurrently therewith, *see* ECF 49, 51, 53, 55, the Superseding Indictment ("Indictment") charges the Peraire-Buenos with wire fraud, money laundering, and conspiracy to receive stolen property in connection with a novel trading strategy that the Indictment characterizes as "the very

1

first of its kind," Superseding Indict. ("Indict.") ¶ 1.[1]  It alleges that the victims of the alleged wire fraud were three "Victim Traders"—or automated computer programs deployed by the traders—engaged in "typical[]" "cryptocurrency arbitrage" trading strategies.  Indict. ¶ 13; *see also id.* ¶ 17 (defining the "Victim Traders" as "MEV Bots").  According to the Indictment, these strategies require that the traders select a "bundle" of transactions to propose to be included on the blockchain in which another user's transaction is sandwiched between two transactions the traders propose—the "frontrun" and backrun transactions.  *See id.* ¶¶ 13, 17, 22, 24.  The Indictment further alleges that these "bundles included coded conditions that the frontrun trades would not be executed unless" the entire bundle (or sandwich) was executed in the order proposed.  *Id.* ¶ 24.

The Indictment alleges that the Peraire-Buenos committed wire fraud by disrupting these trading strategies through an alleged "exploit[]" of a "vulnerability in" the computer code underlying a bot associated with a separate user called the relay.  *Id.* ¶¶ 23-27.  Although it purports to label steps in the computer programming processes involved in the alleged exploit as "false statements," *see id.* ¶¶ 24, 26, the Indictment does not allege any communications between the alleged Victim Traders and the Peraire-Buenos.  Instead, the Indictment suggests that the alleged Victim Traders' MEV Bots interacted only with other users (or their bots) called builders.  *Id.* ¶¶ 12-14, 24.  The builders' bots, in turn, allegedly interacted only with the relay's bot, *not* with the Peraire-Buenos or their alleged validators.  *Id.*

The Indictment's allegations about what "typically" occurs when "automated bots" like those associated with the alleged Victim Traders engage in "cryptocurrency arbitrage," *id.* ¶ 13, indicate that the government will seek to prove that the Peraire-Buenos violated the purported

---

[1]    The Superseding Indictment, filed on March 12, 2025, charges the same three counts as before but adds a fourth count alleging conspiracy to receive stolen property in violation of 18 U.S.C. sections 371 and 2315.  ECF 70.  Its factual allegations are substantially unchanged.

2

norms or implicit expectations among the various users of the at-issue software on the Ethereum Network. In this context, evidence concerning the strategies and expectations of the alleged Victim Traders when crafting their purportedly "typical[]" trading strategies, and their reaction to the alleged exploit that upset those strategies, lies at the core of the government's case.

Discovery produced to date suggests the identity of companies associated with only one of the three alleged Victim Traders. In particular, the government's productions to and correspondence with the Peraire-Buenos indicate:

- ██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
████████████████

- ██████████████████████████████████████
██████████████████████████████████████████████████████
████████████████

- ██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
████████████████

- ██████████████████████████████████████████████████████
  ██████████████████████████
    - ██████████████████████████████████████████████
      ██████████████████████████████████████  ████████
      ██████████████████████  ██████████████████████



The government has confirmed that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ produced these documents voluntarily, not in response to a grand jury subpoena or through some other formal agreement. The government has also stated that it has produced to the Peraire-Buenos all documents received to date from ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. The defense has no reason to believe that additional productions of documents from ▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉ are expected in future Rule 16 productions from the government.

## II.  LEGAL STANDARD

The Sixth Amendment guarantees a defendant the right to compulsory process. This right is implemented in part through Federal Rule of Criminal Procedure 17. Subsection (c) provides for the issuance of subpoenas for documentary evidence and permits a court to order the pretrial return of subpoenaed materials. Fed. R. Crim. P. 17(c)(1). Although not intended to be a general discovery device, the plain language of Rule 17 establishes "a more liberal policy for the production, inspection and use" of evidentiary materials in criminal cases. *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951). The Rule is a means to "expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *United States v. Nixon*, 418 U.S. 683, 698-99 (1974).[2]

---

[2]   Subsection (c)(3) requires a court order for a subpoena calling for the production of "confidential information about a victim" "served on a third party" and ensures that a victim has

The pretrial production of documents is appropriate if the party requesting the documents demonstrates (1) relevancy, (2) potential admissibility, and (3) reasonable specificity with respect to the documents sought. *Nixon*, 418 U.S. at 700. The relevancy element is satisfied if there is a "rational inference that at least part of the [materials] relate to the offenses charged in the indictment." *Id.* The potential admissibility prong of the *Nixon* test requires a "preliminary showing" of the "potential evidentiary uses" of the subpoenaed material. *Id.* at 700, 702. In other words, the items subpoenaed need not actually be used in evidence or certain to be admitted; the moving party need only have a good faith basis for believing that the documents sought may be admissible. *Bowman Dairy Co.*, 341 U.S. at 219-20. "Further, to satisfy *Nixon*'s specificity requirement, a Rule 17(c) subpoena must be able to reasonably specify the information contained or believed to be contained in the documents sought." *United States v. Kwok*, 2024 WL 1715235, at *2 (S.D.N.Y. Apr. 22, 2024) (citation omitted).[3]

### III. THE PROPOSED SUBPOENA'S DOCUMENT SPECIFICATIONS

The proposed subpoena calls for the production of the following documents, where "you" and "your" is ▬▬▬▬▬, its affiliates, owners, and employees:

1.  The document(s) identifying the source code for the MEV Bot that directed the April 2, 2023 transactions referenced ▬▬▬▬▬ in paragraph 24 of the Indictment.

---

notice so they can move to quash. Fed. R. Crim. P. 17(c)(3). Because the proposed subpoena would be served on an entity holding itself out as the victim, the requirements of Rule 17(c)(3) do not apply.

[3]   Animated by fairness concerns, courts have sometimes applied a more permissive standard where, as here, they consider defendant-issued subpoenas to third parties for documents material to the defense. *See United States v. Goldstein*, 2023 WL 3662971, at *2-3 (E.D.N.Y. May 24, 2023) (Chin, J.); *United States v. Smith*, 2020 WL 4934990, at *3 (N.D. Ill. Aug. 23, 2020); *United States v. Tucker*, 249 F.R.D. 58, 65-66 (S.D.N.Y. 2008); *United States v. Rajaratnam*, 753 F. Supp. 2d 317, 321 n.1 (S.D.N.Y. 2011); *see also United States v. Barnes*, 560 F. App'x 36, 40 n.1 (2d Cir. 2014).

2. The document(s) identifying the computer code that constituted the smart contracts for your April 2, 2023 transactions referenced ███████████ in paragraph 24 of the Indictment.

3. The communications with and transmissions to and from builders regarding the proposed bundles for the April 2, 2023 transactions referenced ███████████ in paragraph 24 of the Indictment.

4. An unredacted and complete version of ████████████████████████████████████████████████████████████████████████████████████████.

5. Your communication(s) regarding the incident referenced in ███████████ the Indictment to, from, and among ████████████████████████████.

6. Your communication(s) regarding the incident referenced in ███████████ the Indictment to, from, and among the following individuals ██████████████████████████████████████████████.

7. Your communication(s) regarding the incident referenced in ███████████ the Indictment ████████████████████████████.

8. Documents sufficient to identify MEV Bots, as defined in the Indictment, operating on Ethereum, other than ████████████████████████████████████████████████████████, controlled by you which utilize automated cryptocurrency trading strategies similar to those described in paragraph 13 of the Indictment.

9. The financial reports that identify the amount of money, including cryptocurrency, you have made from the automated cryptocurrency trading strategies identified in paragraph 8, above.

IV. ARGUMENT

The proposed subpoena requests four types of documents: (1) the documents that form the basis for the trades the Peraire-Buenos are alleged to have disrupted, including the alleged instructions for the Victim Traders' bundles and communications with builders, *see* Indict. ¶ 24 (Requests 1-3); (2) complete versions of documents produced voluntarily to the government showing communications among the alleged Victim Traders in the aftermath of the alleged exploit (Request 4); (3) complete communications with others on similar topics where some such communications were produced voluntarily to the government or are otherwise referenced in the discovery (Requests 5-7); and (4) documents related to the sandwich attacks perpetrated by ▮▮▮▮ ▮▮▮▮ as part of its cryptocurrency trading strategy (Requests 8-9). Each request satisfies the *Nixon* requirements. All the documents sought bear directly on the alleged Victim Traders' trading strategies, the methods by which they implemented those strategies, their expectations regarding those strategies, and/or their reaction to the alleged thwarting of those expectations—all of which underpin the Indictment's fraud allegations. These documents are known to exist because they are referenced in the Indictment ▮▮▮▮, have been partially produced, and/or are mentioned in documents in the government's productions. Pretrial production is appropriate because it will help "expedite the trial," particularly where some documents would most appropriately be presented to a jury through expert testimony.

A. Requests 1-3

Requests 1-3 seek the computer code and instructions that form the basis for the transactions that the Peraire-Buenos are alleged to have thwarted with their alleged scheme. The Indictment alleges that the Victim Traders' proposed bundles were coded in a particular way in service of their "arbitrage" trading strategy, *see* Indict. ¶¶ 7, 13, 24, but the government does not appear to have produced the actual underlying code or instructions at issue. The underlying code

7

is relevant in many ways, including because it will elucidate the mechanics of the trades and the alleged exploit and could provide evidence of the alleged Victim Traders' expectations regarding their trades. These documents are also admissible as records of regularly conducted activity pursuant to Federal Rule of Evidence 803(6), the basis of expert opinion under Federal Rule of Evidence 703, and/or under Federal Rule of Evidence 807, the residual exception to the hearsay rule. *See Lone Star Tech. Innovations, LLC v. ASUSTek Computer Inc.*, 2021 WL 12137506, at *2 (E.D. Tex. May 14, 2021) (source code relied upon by expert was "admissible under at least Rule 807"). The content of this code and instructions is likely to be highly complex and appropriately the subject of expert testimony, which makes pretrial production an appropriate and efficient approach.

**B.    Request 4**

Request 4 seeks an unredacted and complete version of a specific document voluntarily provided by ████████████████████ to the government and produced to the defense in discovery. *See* Fed. R. Crim. P. 16(a)(1)(E). The document is plainly relevant, as it appears to be ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. The document, or portions thereof, may be admissible to show the effect of the

8

messages on the recipient(s) under Federal Rule of Evidence 803(3)[4] or 804(b)(3), or under Federal Rule of Evidence 106 if the voluntarily produced version is admitted.[5]

C.     **Requests 5-7**

Requests 5-7 seek the communications ▇▇▇▇▇▇ had regarding the alleged exploit with several individuals and entities.

It is clear that written communications with these individuals and entities exist. Each of those entities is identified as a participant in communications with ▇▇▇▇▇▇ in ▇▇ ▇▇▇▇▇▇, the Indictment, and/or the discovery produced to date. In particular:

- Request 5 seeks communications with the other alleged victims about the alleged exploit. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

- Request 6 seeks communications with individuals identified ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

---

[4]     *See, e.g.*, *United States v. Brown*, 122 F.4th 290, 295-96 (8th Cir. 2024) (alleged stalking victim's real-time appraisal that people were "trying to kill him" and other descriptions of risk were admissible as present-sense impressions); *Flanagan v. Off. of Chief Judge of Cir. Ct. of Cook Cnty., Ill.*, 893 F.3d 372, 375 (7th Cir. 2018) (instructions and responses in course of kidnapping plot admissible to show declarant's motive, intent, and plan); *Bledsoe v. Ferry Cnty., Washington*, 499 F. Supp. 3d 856, 869 n.7 (E.D. Wash. 2020) (statement in report that commission's decision "to pursue a criminal charge was a unanimous decision" admitted as evidence of future plan (alteration and quotation marks omitted)).

[5]     It is not clear whether or on what basis the government may seek to admit the redacted document. Though not typically an independent basis for relevance under *Nixon*, the unredacted document may also be impeachment material for any alleged Victim Trader (or representative) that testifies.

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬

- Request 7 seeks communications with ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

Because it is unclear whether ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬, the subpoena seeks the complete set of communications.

Such communications related to the alleged exploit are plainly relevant and potentially admissible. Communications among the alleged victims and those they have identified as witnesses about the alleged exploit are potentially relevant to what occurred during and after the alleged exploit and the expectations of users of the Ethereum Network with respect to the alleged Victim Traders' "sandwich" transactions. The government has accused the Peraire-Buenos of taking steps after the alleged exploit that the government argues either indicate their alleged intent to defraud or are relevant to the alleged money laundering. The communications called for by the subpoena likely shed light on those issues as well. The communications may be admissible as business records, statements against interest, or then-existing mental or physical state, among

others. *See supra* pp. 8-9 & n.4. They may also have non-hearsay uses for witnesses called at trial.

      **D.**      **Requests 8 and 9**

Requests 8 and 9 seek specific documents relevant to the Indictment's allegation that the alleged victims were engaged in "typical[]" arbitrage trading and its allegations about the makeup and expectations of individuals trading on the Ethereum Network. Request 8 seeks the identification of other MEV Bots controlled by ▮▮▮▮▮▮ that utilize the strategies identified as "typical[]" in the Indictment, and Request 9 seeks the financial reports that identify the amount of money ▮▮▮▮▮▮ has made through the MEV Bots. The responsive documents will allow the Peraire-Buenos to quantify the volume of sandwich trading done by ▮▮▮▮▮▮, which is relevant to whether such a trading strategy is "typical[]" "arbitrage." The responsive documents also will allow the Peraire-Buenos to place the alleged Victim Traders' trading strategies in the context of the strategies employed by other users of the Ethereum Network, which will shed light on the supposed expectations and norms that the alleged exploit supposedly violated. For example, research shows that sandwich attacks siphon off hundreds of millions of dollars a year from retail traders on Ethereum and that over 75% of sandwich attacks are associated with just 20 external accounts.[6] In assessing whether the government is correct that ▮▮▮▮▮▮ trading strategies and related expectations concerning bundled transactions, interactions with builders, and other aspects of the transactions were "typical[]" "arbitrage," it may be appropriate to inform the jury about the scale and nature of these trading strategies in the context of trading on the Ethereum

---

[6]    *Flash Boy's Gain, Everybody's Pain: 2022 Mid-Year Report of Sandwich MEV on Ethereum*, EigenPhi Research 5, 9, 13 (2022), *available at* https://eigenphi.substack.com/p/flash-boys-gain-everybodys-pain?utm_medium=reader2.

11

Network generally. Both requests seek company business records admissible pursuant to Federal Rule of Evidence 803(6).

### E. Pretrial Production

Pretrial production is appropriate here for a number of reasons, all of which are tied to Rule 17(c)'s "chief innovation . . . to expedite the trial." *Nixon*, 418 U.S. at 698. First, this case involves complex evidence which will require expert testimony to understand—evidence such as computer code that underlies the transactions at issue and the decision-making of the alleged victims and/or their automated bots, and financial documents that would be more appropriately contextualized with expert testimony. Pretrial return will allow the parties an adequate opportunity to incorporate such evidence into their expert disclosures and trial preparation. Second, pretrial production will permit sufficient time for the resolution of potential challenges to production by the subpoena's target. For example, ▮▮▮▮▮ may argue that it should not be required to produce communications by or with ▮▮▮▮▮, or it may seek to avoid production of ▮▮▮▮▮ ▮▮▮▮▮.[7] Pretrial production will allow for any necessary litigation on these issues and further steps. *E.g.*, Fed. R. Crim. P. 17(e); 28 U.S.C. § 1783. Third, pretrial production will allow the Peraire-Buenos to see whether they can or want to use the material at trial and to make exhibit disclosures while permitting time for appropriate motions. *See Bowman Dairy Co.*, 341 U.S. at 220 n.5 (quoting the legislative history

---

[7] Although they voluntarily produced ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

to note that pretrial return subpoenas exist "for the purpose of course of enabling the party to see whether he can use [the material] or whether he wants to use [the material]"). For all of these reasons, the Peraire-Buenos request that the Court set a return date of July 1, 2025.

## CONCLUSION

For the foregoing reasons, the Peraire-Buenos respectfully request the Court authorize issuance of the subpoena to ███████████ included in Exhibit 1, with a return date of July 1, 2025.

Date: March 27, 2025                                Respectfully submitted,


                                                    By: /s/ Katherine Trefz

                                                    Katherine Trefz (*pro hac vice*)
                                                    Daniel Shanahan (*pro hac vice*)
                                                    Patrick J. Looby (*pro hac vice* pending)
                                                    Williams & Connolly LLP
                                                    680 Maine Avenue SW
                                                    Washington, DC 20024
                                                    Tel: (202) 434-5000
                                                    ktrefz@wc.com
                                                    dshanahan@wc.com
                                                    plooby@wc.com

                                                    Jonathan P. Bach
                                                    Shapiro Arato Bach
                                                    1140 Avenue of the Americas
                                                    17th Floor
                                                    New York, NY 10036
                                                    Tel: 212-257-4897
                                                    jbach@shapiroarato.com

                                                    *Counsel for Defendant*
                                                    *James Peraire Bueno*


                                                    By: /s/ Daniel N. Marx

                                                    Daniel N. Marx

          William W. Fick (*pro hac vice*)
          Fick & Marx LLP
          24 Federal Street, 4th Floor
          Boston, MA 02110
          Tel: 857-321-8360
          dmarx@fickmarx.com
          wfick@fickmarx.com

          *Counsel for Defendant*
          *Anton Peraire-Bueno*

## CERTIFICATE OF SERVICE

    I hereby certify that on March 27, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record in this matter who are on the CM/ECF system.

                                                         */s/ Katherine Trefz*
                                                         Katherine Trefz