## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

      Plaintiff,

v.

ANTON PERAIRE-BUENO, and JAMES
PERAIRE-BUENO,

      Defendants.

Case No.:  1:24-cr-00293-JGLC

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
## OF JOINT MOTIONS TO DISMISS THE SUPERSEDING INDICTMENT

## <u>TABLE OF CONTENTS</u>

ARGUMENT ....................................................................................................................2

I.  THE COURT SHOULD DISMISS COUNTS ONE, TWO, AND THREE FOR THE REASONS PREVIOUSLY STATED. ..........................................................2

II.  THE COURT SHOULD DISMISS COUNT FOUR. ..............................................2

    A.  The Indictment Fails to Allege the Essential Elements of Receipt of Stolen Property. ................................................................................................3

        1.  The cryptocurrency is not "property" under the NSPA ..............................4

        2.  The cryptocurrency was not "stolen, unlawfully converted, or taken" ..................................................................................................8

        3.  The cryptocurrency did not cross a State boundary ...................................9

    B.  The Indictment Is Unconstitutionally Vague. .......................................................12

    C.  The Indictment Violates Due Process. ..................................................................15

CONCLUSION ..............................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

### CASES

*Barron v. Helbiz Inc.*, 2021 WL 229609 (S.D.N.Y. Jan. 22, 2021)..............................................16

*Coinbase, Inc. v. SEC*, 126 F.4th 175 (3d Cir. 2025) ........................................................6, 16

*Donovan v. GMO-Z.com Tr. Co., Inc.*, 2025 WL 522503 (S.D.N.Y. Feb. 17, 2025) ..................16

*Dowling v. United States*, 473 U.S. 207 (1985)...............................................7, 10, 11, 12

*Russell v. United States*, 369 U.S. 749 (1962) .................................................12, 13, 14

*SEC v. Payward, Inc.*, 2024 WL 4511499 (N.D. Cal. Aug. 23, 2024)............................................6

*SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946) .................................................6, 7, 16, 17

*Shaw v. Rolex Watch U.S.A., Inc.*, 726 F. Supp. 969 (S.D.N.Y. 1989) ............................................9

*United States v. Agrawal*, 726 F.3d 235 (2d Cir. 2013)...........................................................5, 10

*United States v. Aleynikov*, 676 F.3d 71 (2d Cir. 2012)...................................................4, 5, 6, 11

*United States v. Bennett*, 665 F.2d 16 (2d Cir. 1981) ...................................................8

*United States v. Bottone*, 365 F.2d 389 (2d Cir. 1966)...................................................10

*United States v. Caci*, 401 F.2d 664 (2d Cir. 1968)..............................................................12

*United States v. Canton*, 470 F.2d 861 (2d Cir. 1972)..............................................................5, 7

*United States v. Cantrell*, 612 F.2d 509 (10th Cir. 1980).......................................................13, 14

*United States v. Conde*, 309 F. Supp. 2d 510 (S.D.N.Y. 2003)......................................................13

*United States v. Dunlap*, 573 F.2d 1092 (9th Cir. 1978) ...................................................6

*United States v. Houtar*, 980 F.3d 268 (2d Cir. 2020)...........................................................16

*United States v. Johnpoll*, 739 F.2d 702 (2d Cir. 1984) ...........................................10, 11, 12

*United States v. Jones*, 450 F.2d 523 (5th Cir. 1971) ...................................................6

*United States v. Kapelioujnyj*, 547 F.3d 149 (2d Cir. 2008)...........................................................9

*United States v. Lanier*, 520 U.S. 259 (1997)..............................................................15

*United States v. Long Cove Seafood, Inc.*, 582 F.2d 159 (2d Cir. 1978) .........................................3

*United States v. Merz*, 653 F. App'x 72 (2d Cir. 2016) ...................................................................3

*United States v. Pinckney*, 85 F.3d 4 (2d Cir. 1996) ......................................................................3

*United States v. Pirro*, 212 F.3d 86 (2d Cir. 2000) .......................................................................12

*United States v. Schwab*, 61 F. Supp. 2d 1196 (D. Wyo. 1999) ....................................................3

*United States v. Seeger*, 303 F.2d 478 (2d Cir. 1962) ..................................................................12

*United States v. Smith*, 200 F. Supp. 227 (E.D. Tenn. 1961).........................................................3

*United States v. Stafford*, 136 F.3d 1109 (7th Cir. 1998) ..............................................................5

*United States v. Walker*, 176 F.2d 564 (2d Cir. 1949).............................................................11, 12

## STATUTES

18 U.S.C. § 2311 .........................................................................................................................4, 5

18 U.S.C. § 2314 ............................................................................................................... *passim*

18 U.S.C. § 2315 ............................................................................................................... *passim*

## OTHER AUTHORITIES

Blanche    Memo,    Dep't    of    Justice    (April    7,    2025),
    https://www.justice.gov/dag/media/1395781/dl?inline .........................................................17

Brady Dale, *SEC closes investigation into OpenSea, furthering new stance on crypto
    industry*, Axios (Feb. 21, 2025), https://www.axios.com/2025/02/21/crypto-policy-sec-
    opensea-coinbase ...................................................................................................................17

Jonathan Stempel and Niket Nishant, *Ripple Labs says US SEC ends appeal over crypto
    oversight*, Reuters (Mar. 19, 2025), https://www.reuters.com/legal/ripple-ceo-says-us-
    sec-will-drop-appeal-against-crypto-firm-2025-03-19/.........................................................17

Michelle Chapman, *Robinhood says SEC has closed its investigation into the company*, AP
    (Feb. 24, 2025), https://apnews.com/article/robinhood-sec-coinbase-cryptocurrency-
    biden-trump-d16d788760c6d38e0e4dd3c9e6620a22 ...........................................................17

*Receive*, Merriam-Webster's Dictionary ......................................................................................14

Statement    on    Stablecoins,    SEC    Div.    Corp.    Fin.    (Apr.    4,    2025),
    https://www.sec.gov/newsroom/speeches-statements/statement-stablecoins-040425 ............17

The government obtained a Superseding Indictment (hereinafter, the "Indictment") recharging Defendants Anton and James Peraire-Bueno with the three counts from the initial indictment—conspiracy to commit wire fraud (Count One), wire fraud (Count Two), and conspiracy to commit money laundering (Count Three)—and adding a new charge of conspiracy to receive stolen property (Count Four).  ECF 70.  Counts One through Three should be dismissed because the Indictment fixes none of their fatal pleading failures and constitutional infirmities.

Count Four also should be dismissed.  It rests on the same flawed allegations as the wire fraud counts and thus suffers from many of the same defects, plus more.  In particular, among other failings, it alleges the receipt of stolen cryptocurrency, an intangible digital asset that does not constitute "property" under the National Stolen Property Act ("NSPA"), the statute alleged as the object of the conspiracy, 18 U.S.C. § 2315.  That alone requires dismissal of Count Four.

But even the *contention* that theft of cryptocurrency could violate the NSPA runs aground on the Due Process Clause's requirement of fair notice that the alleged conduct could be considered criminal under the NSPA.  Count Four adds another disturbing "first" to this already "first of its kind" case.  Indict. ¶ 1.  *No case has ever held that the theft of cryptocurrency violates the NSPA.* That is unsurprising given that the statute's text—which limits its reach to categories of property that plainly do not include cryptocurrency—and caselaw interpreting the text make clear that the cryptocurrency does not qualify under the statute.

To the extent the government nevertheless seeks to expand the scope of § 2315 and argue that the cryptocurrencies at issue are "securities" under the NSPA, no court has ever endorsed that view.  The government's choice to premise a criminal prosecution on that novel theory is surprising and fundamentally unjust.  That is especially so in the present context where courts remain sharply divided on the regulatory status of cryptocurrency under federal securities laws.  The government

has recognized this division and, as a result, has publicly abandoned its effort to answer that question through individual enforcement actions.  The Court should not countenance the criminal prosecution of the Peraire-Buenos on a controversial theory that the government itself concedes is too novel to fairly enforce even through civil actions.

## ARGUMENT

### I.    THE COURT SHOULD DISMISS COUNTS ONE, TWO, AND THREE FOR THE REASONS PREVIOUSLY STATED.

The Peraire-Buenos reincorporate their prior arguments for dismissal of Counts One through Three.  *See* ECF 49.[1]  The Indictment's factual allegations are unchanged save for a few minor edits that do not affect the basis for the Peraire-Buenos' pending motions to dismiss.  The novel wire fraud allegations centering on an alleged cryptocurrency trading strategy "which is believed to be the very first of its kind," Indict. ¶ 1, continue to offend the Due Process Clause's fair notice requirement (Motion to Dismiss One), omit multiple essential elements (Motion to Dismiss Two), and fail to adequately articulate how the alleged conduct was fraudulent (Motion to Dismiss Three).  The money laundering count remains tied to the wire fraud counts.  *See id.* ¶ 39 (identifying the "specified unlawful activity" as "wire fraud . . . as alleged in Count Two of this Indictment").

### II.    THE COURT SHOULD DISMISS COUNT FOUR.

Count Four purports to charge the Peraire-Buenos with conspiring to "recei[ve] . . . stolen property" in violation of 18 U.S.C. § 2315.  Indict ¶ 41.  This new count should be dismissed for

---

[1]    The minor changes to the factual allegations did not alter the paragraph numbering from the initial indictment through paragraph 32.  Accordingly, the Court may rely on the citations to those paragraphs in the original briefing.  The Peraire-Buenos continue to assume that the Indictment's allegations are true for the purposes of these motions, even where they believe the Indictment's allegations misunderstand or misstate the facts, or that the government will not be able to prove its allegations.  *See* ECF 49 at 3 n.1.

three reasons:  (1) the conduct it alleges was the object of the conspiracy does not constitute an offense under § 2315; (2) the charge is unconstitutionally vague; and (3) as an unprecedented application of the NSPA,[2] it violates due process.

### A.      The Indictment Fails to Allege the Essential Elements of Receipt of Stolen Property.

Section 2315 criminally sanctions any person who "receives, possesses, conceals, stores, barters, sells, or disposes of any goods, wares, or merchandise, securities, or money of the value of $5,000 or more, . . . which have crossed a State or United States boundary after being stolen, unlawfully converted, or taken, knowing the same to have been stolen, unlawfully converted, or taken." 18 U.S.C. § 2315.  The conduct alleged to be the object of the conspiracy charged in Count Four, however, does not satisfy the essential elements of that offense.[3]   Specifically, the cryptocurrency at issue is not "property" under the NSPA, was not "stolen, unlawfully converted, or taken" from the alleged victims, and never crossed a State boundary.

---

[2]      The NSPA comprises 18 U.S.C. § 2314, which criminalizes the interstate transport, transmission, or transfer of certain classes of stolen property, and § 2315, which criminalizes the sale or receipt of the same classes of property.  "[P]recedent interpreting [§ 2314] is persuasive in considering [§ 2315], as the two sections merely address different aspects of the same type of criminal behavior, namely dealing in stolen property, and both are part of the same legislative scheme."  *United States v. Merz*, 653 F. App'x 72, 74 n.2 (2d Cir. 2016) (citation omitted).

[3]      As noted in the Peraire-Buenos' motions to dismiss the initial indictment, *see* ECF 49 at 21 n.17, a conviction for conspiracy requires that "the intended future conduct [the defendants] agreed upon includes all the elements of the substantive crime."  *United States v. Pinckney*, 85 F.3d 4, 8 (2d Cir. 1996) (cleaned up) (citation omitted).  Courts therefore will dismiss indictments charging conspiracy to violate the NSPA that fail to allege the NSPA's essential elements.  *See, e.g.*, *United States v. Long Cove Seafood, Inc.*, 582 F.2d 159, 161 (2d Cir. 1978) (affirming pre-trial dismissal of count charging conspiracy to violate § 2314 because the NSPA does not apply to wildlife taken in violation of state conservation laws); *United States v. Schwab*, 61 F. Supp. 2d 1196, 1204-08 (D. Wyo. 1999) (dismissing § 2314 conspiracy count along with substantive counts because the indictment failed to allege the defendants knew checks were taken by fraud); *United States v. Smith*, 200 F. Supp. 227, 229 (E.D. Tenn. 1961) (dismissing charge of conspiracy to violate § 2314 because the statute "does not apply to spurious obligations of foreign corporations").

1.       The cryptocurrency is not "property" under the NSPA

Count Four is premised on the alleged receipt of "Crime Proceeds," Indict. ¶¶ 41-42, a term that the Indictment defines as "approximately $25 million worth of cryptocurrency," *id.* ¶ 23.  The Indictment does not name the cryptocurrency (or cryptocurrencies).  Although later paragraphs use the term "Crime Proceeds" to refer to proceeds from the sale of the cryptocurrency, *see id.* ¶¶ 32, 42, the Indictment plainly alleges that at the critical time, on April 2, 2023, the property the alleged Victim Traders supposedly lost was cryptocurrency, *see id.* ¶¶ 23, 26a-c, 31a-d.  A court evaluating whether stolen property qualifies under the NSPA assesses the nature of the alleged property "at the time of the theft."  *United States v. Aleynikov*, 676 F.3d 71, 78 (2d Cir. 2012) (emphasis omitted).

By its express terms, § 2315 applies only to specific types of property—*i.e.*, "goods, wares, or merchandise, securities, or money."  18 U.S.C. § 2315.  The Indictment does not specify what statutory category of property the cryptocurrency allegedly falls into.  Regardless, the allegedly stolen cryptocurrency does not qualify under any category, and as a result, it falls outside the limited scope of the NSPA.

*The cryptocurrency is not money*.  The cryptocurrency is not "money," as the statute defines it, because it is not "legal tender of the United States or of any foreign country, or any counterfeit thereof."  18 U.S.C. § 2311.

*The cryptocurrency is not a good, ware, or merchandise*.  The Indictment alleges that cryptocurrency is a form of "digital currency" stored in "digital 'wallets,' which are identified by unique electronic 'addresses.'"  Indict. ¶ 4.  These allegations preclude a finding that the cryptocurrency is a "good, ware, or merchandise" because those terms do not cover intangible property.  *See Aleynikov*, 676 F.3d at 77.  The defendant in *Aleynikov* was a computer programmer at Goldman Sachs who allegedly stole 500,000 lines of code for the company's high-frequency

trading system. *Id.* at 73-74. The Second Circuit concluded that he did not violate § 2314 because "the theft and subsequent interstate transmission of purely intangible property is beyond the scope of the NSPA," and the defendant "stole purely intangible property embodied in a purely intangible format." *Id.* at 77-78; *see United States v. Agrawal*, 726 F.3d 235, 251 (2d Cir. 2013) (reaffirming *Aleynikov*'s holding); *accord, e.g.*, *United States v. Stafford*, 136 F.3d 1109, 1114-15 (7th Cir. 1998) ("Comdata codes" used in trucking industry to transfer money are "information," not "goods, wares, or merchandise"). Like computer code, cryptocurrency is a "purely intangible property embodied in a purely intangible format," *Aleynikov*, 676 F.3d at 78, and thus, is *not* a "good, ware, or merchandise" under § 2315.

_The cryptocurrency is not a security_. The Indictment does not allege that the cryptocurrency (or cryptocurrencies) at issue are securities. To the extent the government may make that claim, it would fail. Securities under § 2315 are specifically defined instruments like stock certificates, bonds, checks, investment contracts, and "any instrument commonly known as a 'security.'" 18 U.S.C. § 2311. The Second Circuit has described these items, collectively, as "instruments giving to their legal holders rights to money or other property . . . which have intrinsic value and are recognized and used as such in the regular channels of commerce." *United States v. Canton*, 470 F.2d 861, 864 (2d Cir. 1972) (citation omitted). At the same time, it has cautioned that such instruments should not be "construed in their broadest possible senses," but only in their "usual financial or commercial sense." *Id.* at 864.

Cryptocurrency does not fall under this limited definition. The Indictment alleges that cryptocurrency is, as its name implies, a form of "currency," Indict. ¶ 4, not an instrument entitling its holder to a sum of money or specific property. While that allegation does not capture the diverse types of digital assets that can be exchanged on a blockchain, it is generally correct concerning

cryptocurrency's basic function as a digital medium of exchange. *See Coinbase, Inc. v. SEC*, 126 F.4th 175, 208-09 (3d Cir. 2025) (Bibas, J., concurring) (cataloguing various types of digital assets and noting that Ether—the native cryptocurrency on Ethereum—functions like a currency or a commodity and "certainly does not work like a security"). It makes no sense to describe *currency* as something that entitles its holder to demand from its issuer either a sum of money in the form of rent or interest, or specific property in the form of secured collateral. *See United States v. Dunlap*, 573 F.2d 1092, 1093-95 (9th Cir. 1978) (per curiam) (affirming dismissal of indictment charging transport of counterfeit department store scrip because scrip, which functions as a "form of private money" and a "medium of limited exchange," is not a "security" under the NSPA). Currency is something else entirely, which is why the NSPA lists "money" and "securities" as separate categories. *Cf. Aleynikov*, 676 F.3d at 78 (observing that money "is specifically enumerated in § 2314 as a thing apart and distinct from 'goods,' 'wares,' or 'merchandise'").[4]

Critically, no court has held that cryptocurrency is a security under the NSPA. In civil cases under the Securities Act, courts recently have wrestled with novel claims that cryptocurrencies and/or the programs through which the currencies are promoted qualify as "investment contracts" under *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946). But no circuit has ever held that cryptocurrency is a security under *Howey*. District courts have reached conflicting holdings, *see infra* p. 16, and even those that have found particular digital assets to satisfy the *Howey* test have been careful to distinguish between the currencies themselves (which generally do not function like securities under *Howey*) and the transactions in which they are bought and sold (which might, depending on the terms of their sale). *See, e.g.*, *SEC v. Payward, Inc.*, 2024

---

[4]     The fact that a digital currency may have value on or off a blockchain, or could be sold to someone off the chain for cash, does not make it a security. *Cf. United States v. Jones*, 450 F.2d 523, 524-25 (5th Cir. 1971) (airline tickets redeemable for cash are not securities under the NSPA).

WL 4511499, at *9 (N.D. Cal. Aug. 23, 2024) (noting that courts "have rejected" arguments that "crypto assets themselves—as in, the individual tokens bought, sold, and traded on [a given] platform—are investment contracts").

Because no court has applied *Howey* to define "securities" under the NSPA, and given the conflict among the civil cases under the Securities Act, doing so here—for the first time—would pose grave constitutional concerns. The Supreme Court devised the multi-factor *Howey* test to be "flexible" and "capable of adaptation" in view of the broad remedial purposes of the Securities Act. *Howey*, 328 U.S. at 299. The NSPA, like other federal criminal statutes, requires the opposite interpretive canon. *See Dowling v. United States*, 473 U.S. 207, 213, 228 (1985) (narrowly construing the NSPA because "[d]ue respect for the prerogatives of Congress in defining federal crimes prompts restraint in this area"). As the Second Circuit has held, "[i]f there [is] any doubt or any conflict in interpretation of [the term 'securities' under the NSPA], it must be resolved in favor of the [defendant]." *Canton*, 470 F.2d at 865. That doubt and conflict exists here, which counsels against a prosecution premised on expanding the scope of the NSPA through application of *Howey*. As discussed below, *see infra* p. 17, the federal government has largely abandoned its attempt to civilly regulate cryptocurrency under the Securities Act, and the SEC's Division of Corporate Finance has announced its position that stablecoins—among the types of cryptocurrencies allegedly stolen here, *see* Indict. ¶ 26a—are not securities. Against that backdrop, the unprecedented argument in this criminal prosecution that the allegedly stolen cryptocurrency is a security under the NSPA would plainly offend due process. *See infra* pp. 15-18.

**2.    The cryptocurrency was not "stolen, unlawfully converted, or taken"**

The Indictment also does not sufficiently allege that the cryptocurrency at issue was "stolen, unlawfully converted, or taken." 18 U.S.C. § 2315.[5]  Because the Indictment does not allege a theory of theft that is distinct from the alleged scheme to defraud, the Indictment alleges that the cryptocurrency was "stolen" only insofar it constitutes the proceeds of wire fraud.  *See* Indict. ¶¶ 40, 42.  But the Indictment fails to charge an offense under the wire fraud statute for all of the reasons set forth in the Peraire-Buenos' Motion to Dismiss Two, which the Peraire-Buenos hereby incorporate against Count Four.  *See* ECF 49 at 20-29.

It is worth reiterating that the alleged victims did not retain a property interest in the cryptocurrency they traded away.  Like the wire fraud statute, § 2315 requires interference with property interests.  *See United States v. Bennett*, 665 F.2d 16, 22 (2d Cir. 1981) (NSPA only reaches actions that "deprive the owner of [the property], or a person having an interest tantamount to ownership, of the perquisites of ownership").  According to the Indictment, the alleged victims had already sold their cryptocurrency to third parties (*i.e.*, not the Peraire-Buenos) through pre-programmed frontrun transactions *before* the alleged "Tampered Transactions" took place.  Indict. ¶¶ 26a, 26b.  These frontrun trades, through which the alleged victims intentionally traded at a loss, allegedly occurred as programmed.  *See id.* ¶ 26a (alleging as the first step in the supposed exploit that the Peraire-Buenos "allowed the Victim Traders to complete their buy transactions (*i.e.*, their frontrun trades)").  Through their backrun trades, the alleged victims hoped to recoup their trading losses and to "extract a trading profit" from the victim of the sandwich by buying back the cryptocurrency they had just sold at more favorable prices.  Indict. ¶ 13; *see* ECF 49 at 16-

---

[5]    These terms together refer to the deprivation of and/or interference with property interests. *See United States v. Bennett*, 665 F.2d 16, 22 (2d Cir. 1981).  Outside of the statutory allegations in Count Four, the Indictment characterizes the cryptocurrency as "stolen." *E.g.*, Indict. ¶ 2.

17 (explaining that this adversarial strategy is known as a "sandwich attack"). In effect, the alleged victims voluntarily relinquished any property interest in their existing cryptocurrency in a bid for future financial gain from a series of future trades, *speculating* that their transactions plus the Lure Transactions (which did not belong to the alleged victims) would be published by validators in the order their MEV-Bots had proposed. The alleged Victim Traders had no property interest "tantamount to ownership" in the speculative gains from their sandwich strategy. *Cf. Shaw v. Rolex Watch U.S.A., Inc.*, 726 F. Supp. 969, 974 (S.D.N.Y. 1989) ("hypothetical" profits from sale of allegedly stolen watches cannot be stolen under § 2315).

### 3.    The cryptocurrency did not cross a State boundary

Count Four must be dismissed for the further reason that it fails to allege that any supposedly stolen cryptocurrency crossed state lines. Section 2315 applies only where a defendant receives property that "crossed a State or United States boundary after being stolen, unlawfully converted, or taken, knowing the same to have been stolen, unlawfully converted, or taken." 18 U.S.C. § 2315. The Indictment alleges the theft of cryptocurrency, *see* Indict. ¶ 26c, but alleges no interstate transport of the cryptocurrency. The Indictment does not even identify the State where the cryptocurrency was supposedly located, at any point in time. The failure to allege interstate transport of the allegedly stolen property is fatal to Count Four. *See United States v. Kapelioujnyj*, 547 F.3d 149, 154-57 (2d Cir. 2008) (reversing conviction for conspiracy to violate § 2315 for failure to prove agreement to move stolen property interstate); *Shaw*, 726 F. Supp. at 974 (dismissing civil RICO count predicated on § 2314 for failure to allege interstate transport of stolen watches).

Instead, the Indictment alleges only the interstate transfer of U.S. dollars that allegedly represent the proceeds of the later sale of the cryptocurrency. *See* Indict. ¶ 31g (alleging that

cryptocurrency was exchanged for U.S. dollars by October 20, 2023); *id.* ¶ 42 (alleging that the transfer of "U.S. dollars to various bank accounts" satisfies the interstate transport requirement).

These allegations fail to state § 2315's interstate transport element because that money is not "the same" property that was allegedly stolen—*i.e.*, the cryptocurrency—as required by the statute. *See Dowling*, 473 U.S. at 216. The defendant in *Dowling* had manufactured and distributed across state lines phonorecords of unreleased Elvis Presley recordings. *Id.* at 209-11. The Court held that this conduct was not covered by the NSPA because intellectual property rights are not "goods, wares, or merchandise" within the meaning of the NSPA. *Id.* at 216. The Court rested this holding on the statute's requirement that the property stolen and transported be "the same," which "seems clearly to contemplate a physical identity between the items unlawfully obtained and those eventually transported," which did not cover the intellectual property at issue. *Id.*; *see Agrawal*, 726 F.3d at 252-53 (noting that *Dowling*'s statutory interpretation "dictated" the conclusion that a defendant who stole computer "code in intangible form . . . and only later copied it onto paper or some other tangible medium" would not violate the NSPA). Here, the Indictment's allegation that U.S. currency later crossed state lines is insufficient to charge an offense under § 2315 because that U.S. currency lacks the required "physical identity" with the allegedly stolen cryptocurrency.[6]

While some authorities have held that the transport of the proceeds of stolen property may satisfy the NSPA's interstate transport requirement in some circumstances, *see United States v.*

_____

[6]     *Dowling* noted that courts interpreting the NSPA have not required "that the items stolen and transported remain in *entirely* unaltered form," 473 U.S. at 216 (emphasis added), and the Second Circuit had held pre-*Dowling* that the transport of photocopies of stolen papers can satisfy the interstate transport element, *see United States v. Bottone*, 365 F.2d 389, 393-94 (2d Cir. 1966). Neither *Dowling*'s observation nor *Bottone*'s holding supports an argument that the transport of an entirely different type of property than that which was stolen would satisfy the "physical identity" requirement. Cryptocurrency and U.S. currency are obviously not physically identical.

*Johnpoll*, 739 F.2d 702, 714-15 (2d Cir. 1984); *United States v. Walker*, 176 F.2d 564, 566 (2d Cir. 1949), these cases do not save Count Four for two reasons.

*First*, the "thing stolen" must qualify under the NSPA "at the time of the theft." *Aleynikov*, 676 F.3d at 78. Here, as discussed above, *supra* pp. 4-8, the allegedly stolen cryptocurrency does not qualify as property under the NSPA. That was not true in *Johnpoll* or *Walker*, which involved proceeds from property falling under the NSPA. *See Johnpoll*, 739 F.2d at 714-15 (money from sale of securities); *Walker*, 176 F.2d at 566 (bank checks exchanged for traveler's checks). No case has held that the interstate transport requirement was satisfied where a form of property not cognizable under the NSPA was stolen and later exchanged for one that was before being transported.

*Second*, *Johnpoll* and *Walker* pre-date *Dowling* and thus did not have the benefit of the Supreme Court's conclusion that the NSPA requires a "physical identity" between the property stolen and the property transported. 473 U.S. at 216. Neither *Walker* nor *Johnpoll* rested its holding on the statutory text. The *Walker* court concluded that "equity" would not distinguish between stolen property and its proceeds, and noted that the "*purpose* of the statute" revealed no reason to "distinguish between the original property and its substitute." 176 F.2d at 566 (emphasis added). Even so, the court "concede[d]" that not all proceeds of stolen property would qualify and limited its holding to circumstances akin to those where a defendant "defrauded his victim of bills of a large denomination and changed them into smaller bills." *Id.* *Johnpoll* observed that "[s]ection 2314 mentions only 'securities or money' without any reference to 'proceeds,'" but

11

nevertheless treated *Walker*'s atextual holding as binding.  *See* 739 F.2d at 715.[7]  *Dowling*'s

contrary interpretation of the NSPA makes *Johnpoll* and *Walker* no longer good law.

> ### B.    The Indictment Is Unconstitutionally Vague.

The Court alternatively should dismiss Count Four because its vague allegations violate

the Fifth and Sixth Amendments.  *United States v. Pirro*, 212 F.3d 86, 91-92 (2d Cir. 2000).  In

addition to alleging the essential elements, an indictment also must contain "the essential facts

constituting the offense charged."  *United States v. Seeger*, 303 F.2d 478, 483 (2d Cir. 1962)

(quoting Fed. R. Crim. P. 7(c)) (internal quotation marks omitted).  This requirement protects a

defendant's Fifth Amendment right to be tried on facts presented to the grand jury and Sixth

Amendment right "to be informed of the nature . . . of the accusation against him."  *Pirro*, 212

F.3d at 92 (citation omitted); *see also* ECF 49 at 29-30.

Where a statute defines an offense in generic terms, "it is not sufficient that the indictment

shall charge the [offense] in the same generic terms"; instead, it must go further to "inform the

accused of the specific offense, coming under the general description, with which he is charged."

*Russell v. United States*, 369 U.S. 749, 765 (1962) (citations omitted).  In other words, an

indictment must be "specific enough to describe a particular criminal act, rather than a type of

crime."  *Pirro*, 212 F.3d at 93.  "A cryptic form of indictment" that "requires the defendant to go

to trial with the chief issue undefined" must be dismissed.  *Russell*, 369 U.S. at 766.

Here, Count Four is intolerably "cryptic" and nonspecific in several respects.

*First*, Count Four does not specify the property type at issue.  *See* Indict. ¶ 42 (alleging as

the "object of the conspiracy" the theft of "goods, wares, merchandise, securities, and money").

---

[7]    The Second Circuit has relied on *Walker* for a similar holding in one other case that also pre-dates *Dowling* and contains no additional analysis.  *See United States v. Caci*, 401 F.2d 664, 672-73 (2d Cir. 1968).

While the government generally may charge alternative means of violating a statute in the conjunctive, logically inconsistent theories can render an indictment unconstitutionally vague. *See United States v. Conde*, 309 F. Supp. 2d 510, 511 (S.D.N.Y. 2003) ("An indictment is defective if it contains logically inconsistent counts."); *cf. United States v. Cantrell*, 612 F.2d 509, 511 (10th Cir. 1980) (reversing convictions due to inconsistent allegations in indictment charging both transport of stolen goods *to* Kansas and receipt of stolen goods *in* Kansas).

Here, the Indictment's factual allegations only muddy the waters by changing the description of the allegedly stolen property depending on the paragraph. As discussed above, *supra* pp. 4-8, the allegedly stolen cryptocurrency does not fit any of the categories. The government appears to recognize this mis-match between the alleged facts and statutory elements because the Indictment attempts to elide it through a shifting and inconsistent definition of the property at issue. Indictment paragraph 23 defines the capitalized term "Crime Proceeds" as "approximately $25 million worth of *cryptocurrency*." Indict. ¶ 23 (emphasis added); *see also id.* ¶ 31a (alleging the receipt of "approximately $25 million in various cryptocurrencies, which represented the Crime Proceeds"). But this definition apparently no longer applies in the statutory allegations for Count Four, which allege that the Peraire-Buenos "received and transferred the Crime Proceeds (*i.e.*, the stolen *money*)."[8] Indict. ¶ 42 (emphasis added).

These inconsistent allegations concerning an essential element of the offense present serious constitutional questions. On what theory did the government instruct the grand jury? How can the Court ensure that the grand jury returned an indictment on a legally valid theory if it does not know what property the government claimed was stolen? *See Russell*, 369 U.S. at 768

---

[8]     As discussed above, these allegations regarding the cryptocurrency's later transformation into U.S. currency do not save Count Four because § 2315 requires that the property stolen and transported across state lines be the same. *See supra* pp. 10-12.

("corollary purpose" of an indictment "is to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had" (citation omitted)).  How can the Court or the Peraire-Buenos know whether the theory the government ultimately pursues at trial conforms to the one it pursued before the grand jury?  *See id.* at 770 (vague indictment risks that "a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him").  Because the vague Indictment leaves these questions unanswered, it fails to serve the core functions of an indictment and must be dismissed.

<u>Second</u>, Count Four alleges conflicting actions by the Peraire-Buenos with respect to the property.  Paragraph 41 alleges that the Peraire-Buenos conspired to violate § 2315 through the "receipt of stolen property."  Indict. ¶ 41.  In the next paragraph, the conduct alleged to be the "object of the conspiracy" inexplicably expands:  "the defendants . . . would and did receive, *possess, conceal, store, barter, sell, and dispose of* [stolen property]."  *Id.* ¶ 42 (emphasis added).

This ambiguity compounds the constitutional problems discussed above relating to the property at issue.  Paragraph 41 reads as though the grand jury indicted on a receipt theory.  If so, that means the government likely argued before the grand jury that the stolen property was cryptocurrency.  The common definition of "to receive" is "to come into possession."  *Receive*, Merriam-Webster's Dictionary.  This can occur only once.  *See Cantrell*, 612 F.2d at 511 ("Under neither common sense nor the law do we 'receive' our possessions anew each time we come upon them.").  The Indictment alleges that the "$25 million of various stablecoins or other more liquid cryptocurrencies" were "stolen by the defendants through the Tampered Transactions" on April 2, 2023.  Indict. ¶ 26c.  But, as explained above, cryptocurrency is not covered under § 2315.  Paragraph 41 suggests the government may have secured the Indictment on an invalid theory.

Alternatively, if Paragraph 42's laundry list of alleged actions was the basis of the grand jury's decision, that would raise a separate question whether the government relied on an invalid proceeds-based theory to satisfy the interstate transport requirement. *See supra* pp. 9-12. And either way, the Indictment leaves the Peraire-Buenos in the dark regarding the nature of the offense they must defend against at trial.

*Third*, Count Four is unconstitutionally vague for the same reasons as the wire fraud counts because the Indictment's theft and fraud theories rely on the same alleged facts. As explained in Motion to Dismiss Three, ECF 49 at 29-33, which the Peraire-Buenos hereby incorporate against Count Four, the Indictment's lack of factual allegations concerning the material misrepresentation and property elements renders the charges unconstitutionally vague.

      **C.    The Indictment Violates Due Process.**

As explained in the Peraire-Buenos' motion to dismiss the initial indictment, a statute is void for vagueness where its text and cases interpreting it fail to provide fair notice that the alleged conduct could be considered criminal. *See* ECF 49 at 10-11; *see also United States v. Lanier*, 520 U.S. 259, 269 (1997) (holding that prior judicial decisions must give "reasonable warning that" the defendant's conduct was unlawful). All of the reasons that support dismissal of the wire fraud counts under the Due Process Clause apply to Count Four, which is apparently premised on the same flawed fraud theory. The government's failure to defend its novel application of the wire fraud statute to these alleged facts similarly dooms Count Four. *See* ECF 63 at 3-4 (noting the government's failure to identify a single case alleging fraud on even remotely similar grounds).

The application of § 2315 to the alleged facts further defies the fair notice requirement. The statutory text and the cases construing the NSPA cannot provide fair notice because together they demonstrate that the allegedly stolen cryptocurrency *does not* qualify as any of the specific property types covered by the NSPA. *See supra* pp. 4-8. Indeed, *no criminal case has ever applied*

_the NSPA to stolen cryptocurrency or engaged with an argument that the statute might apply to_
_cryptocurrency_.  Accordingly, as far as the federal court dockets reveal, the Peraire-Buenos may
be the very first defendants to ever have been charged on this unprecedented (and flawed) theory.
If the Court were to hold that the allegedly stolen cryptocurrency qualifies as property under the
NSPA, that would be a novel and unexpected conclusion that an "ordinary person" would not have
anticipated.  _United States v. Houtar_, 980 F.3d 268, 273 (2d Cir. 2020).

In particular, any argument that the allegedly stolen cryptocurrency qualifies as a security
under the NSPA would be especially problematic given the current confusion in the law
concerning the regulation of cryptocurrency.  As noted above, no court has ever held that
cryptocurrency qualifies as a security under the NSPA.  The argument that cryptocurrency does
qualify under the NSPA therefore would rely on civil cases brought under the Securities Act, which
have produced mixed results.  No circuit has held that cryptocurrency qualifies as a security under
the Securities Act.  The district courts have reached diverging answers when applying the multi-
factor _Howey_ test to particular facts.  _See, e.g._, _Donovan v. GMO-Z.com Tr. Co., Inc._, 2025 WL
522503, at *1, *10 (S.D.N.Y. Feb. 17, 2025) (concluding that plaintiff failed to establish that a
"digital asset known as GYEN" "was offered in an investment-contract 'ecosystem'"); _Barron v._
_Helbiz Inc._, 2021 WL 229609, at *1-4 (S.D.N.Y. Jan. 22, 2021) (concluding that the "Helbiz Coin"
is a security based on statements made in connection with its initial offering and subsequent
promotion), _vacated on other grounds_, 2021 WL 4519887 (2d Cir. Oct. 4, 2021).

Applying this unsettled caselaw to hold that the allegedly stolen cryptocurrency is a
security in a _criminal case_ would present grave due process concerns.  _See Coinbase_, 126 F.4th at
215 (Bibas, J., concurring) (suggesting application of "ill-fitting _Howey_ test" to cryptocurrency
could raise due process concerns absent clearer guidance from the SEC).  That application would

be particularly unexpected to an ordinary person because the term "security" has thus far been interpreted narrowly under the NSPA. *See supra* pp. 5-6.

The government's addition of Count Four comes at a surprising moment. The federal government is currently disavowing arguments that cryptocurrencies qualify as securities under the Securities Act and has halted its prior regulation-by-enforcement regime. Both before and after the government obtained the new Indictment in this case, it had dismissed or resolved cases aggressively applying the *Howey* test to argue that cryptocurrencies are securities.[9] The Department of Justice has publicly announced that it "is not a digital assets regulator," and will "no longer pursue litigation or enforcement actions that have the effect of superimposing regulatory frameworks on digital assets."[10] To that end, the Department has instructed its attorneys not to charge offenses where "the charge would require the Justice Department to litigate whether a digital asset is a 'security' or 'commodity,'" *id.*—*i.e.*, the very question Count Four appears to present. And the relevant SEC division has issued guidance that stablecoins—among the types of cryptocurrencies allegedly stolen here, *see* Indict. ¶ 26b—are *not* securities.[11]

---

[9]    *See SEC v. Coinbase, Inc.*, No. 23-cv-4738 (S.D.N.Y. Feb. 28, 2025), ECF 178 (Joint Stipulation to Dismiss, and Releases); *SEC v. Payward, Inc.*, No. 3:23-cv-06003 (N.D. Cal. Mar. 27, 2025), ECF 127 (Joint Stipulation to Dismiss and Releases); *SEC v. Sun*, No. 23-cv-02433 (S.D.N.Y. Feb. 27, 2025), ECF 83 (Order Granting Letter Motion to Stay); *see also* Jonathan Stempel and Niket Nishant, *Ripple Labs says US SEC ends appeal over crypto oversight*, Reuters (Mar. 19, 2025), https://www.reuters.com/legal/ripple-ceo-says-us-sec-will-drop-appeal-against-crypto-firm-2025-03-19/; Michelle Chapman, *Robinhood says SEC has closed its investigation into the company*, AP (Feb. 24, 2025), https://apnews.com/article/robinhood-sec-coinbase-cryptocurrency-biden-trump-d16d788760c6d38e0e4dd3c9e6620a22; Brady Dale, *SEC closes investigation into OpenSea, furthering new stance on crypto industry*, Axios (Feb. 21, 2025), https://www.axios.com/2025/02/21/crypto-policy-sec-opensea-coinbase.

[10]    *See* Blanche Memo, Dep't of Justice (April 7, 2025), https://www.justice.gov/dag/media/1395781/dl?inline.

[11]    *See* Statement on Stablecoins, SEC Div. of Corp. Fin. (Apr. 4, 2025), https://www.sec.gov/newsroom/speeches-statements/statement-stablecoins-040425.

It would be unexpected, and fundamentally unfair, for the government to proceed with a criminal prosecution on a novel theory it has now disavowed in civil enforcement actions. The Court should not permit any attempt by the government to do so.

## CONCLUSION

For all of the reasons discussed above and in the Peraire-Buenos' initial Motions to Dismiss the Indictment (ECF 49) incorporated herein, the Court should dismiss the Superseding Indictment.

Date: April 14, 2025                                        Respectfully submitted,


                                                            By: */s/ Katherine Trefz*

                                                            Katherine Trefz (*pro hac vice*)
                                                            Daniel Shanahan (*pro hac vice*)
                                                            Patrick J. Looby (*pro hac vice*)
                                                            Williams & Connolly LLP
                                                            680 Maine Avenue SW
                                                            Washington, DC 20024
                                                            Tel: (202) 434-5000
                                                            ktrefz@wc.com
                                                            dshanahan@wc.com
                                                            plooby@wc.com

                                                            Jonathan P. Bach
                                                            Shapiro Arato Bach
                                                            1140 Avenue of the Americas
                                                            17th Floor
                                                            New York, NY 10036
                                                            Tel: 212-257-4897
                                                            jbach@shapiroarato.com

                                                            *Counsel for Defendant*
                                                            *James Peraire-Bueno*


                                                            By: */s/ Daniel N. Marx*

                                                            Daniel N. Marx
                                                            William W. Fick (*pro hac vice*)

Fick & Marx LLP
24 Federal Street, 4th Floor
Boston, MA 02110
Tel: 857-321-8360
dmarx@fickmarx.com
wfick@fickmarx.com

*Counsel for Defendant*
*Anton Peraire-Bueno*

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2025 I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record in this matter who are on the CM/ECF system.

*/s/ Katherine Trefz*
Katherine Trefz

19