**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>v.<br><br>ANTON PERAIRE-BUENO, and JAMES PERAIRE-BUENO,<br><br>      Defendants. | Case No.:  1:24-cr-00293-JGLC<br><br>**[FILED PARTIALLY UNDER SEAL]** |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
<u>JOINT MOTION TO COMPEL EXPERT DISCLOSURES</u>**

## **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

BACKGROUND ..............................................................................................................2

    A.    The Government Indicts a Technical Case Based on an Allegedly Novel
           Cryptocurrency Trading Strategy. ..........................................................2

    B.    The Government Urges Delay in Providing its Expert Disclosures. ......................5

    C.    The Government Provides Inadequate Disclosures on the Deadline.....................6

ARGUMENT ....................................................................................................................8

I.    THE COURT SHOULD ORDER THE GOVERNMENT TO PROVIDE
    DISCLOSURES CONSISTENT WITH RULE 16(a)(1)(G)...............................................9

    A.    Technical Opinion Testimony Falls Under Rule 702 Even When Offered
           Through a "Percipient" Witness. ...........................................................9

    B.    The Supposed "Percipient Witness" Testimony Will Contain Expert
           Opinions under Rule 702. ....................................................................11

    C.    The Disclosures Fail to Identify the Opinions or the Bases or Reasons................14

II.    THE COURT SHOULD HOLD DEFENDANTS' DISCLOSURE DEADLINE
    IN ABEYANCE OR, ALTERNATIVELY, ORDER EXPEDITED BRIEFING.............15

CONCLUSION.................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256 (2d Cir. 2002) .....................................9

*Bank of China, New York Branch v. NBM LLC*, 359 F.3d 171 (2d Cir. 2004)............10, 11, 12, 13

*In re: Taxotere (Docetaxel) Prods. Liab. Litig.*, 26 F.4th 256 (5th Cir. 2022)............................10

*Marx & Co., Inc. v. Diners' Club Inc.*, 550 F.2d 505 (2d Cir. 1977) ............................................12

*United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991).......................................................11, 12

*United States v. Cabrera*, 13 F.4th 140 (2d Cir. 2021)................................................................10

*United States v. Cuti*, 720 F.3d 453 (2d Cir. 2013) .....................................................................11

*United States v. Duvall*, 272 F.3d 825 (7th Cir. 2001) ................................................................14

*United States v. Figueroa-Lopez*, 125 F.3d 1241 (9th Cir. 1997) ...............................................10

*United States v. Garcia*, 413 F.3d 201 (2d Cir. 2005) ...........................................................10, 11

*United States v. Gentile*, 2024 WL 3251702 (E.D.N.Y. June 20, 2024) .................................14, 15

*United States v. Kwok*, 2024 WL 1773143 (S.D.N.Y. Apr. 24, 2024) ..............................8, 14, 15

*United States v. Lee*, 834 F.3d 145 (2d Cir. 2016)......................................................................15

*United States v. Ramirez*, 491 F. App'x 65 (11th Cir. 2012).......................................................10

*United States v. Rigas*, 490 F.3d 208 (2d Cir. 2007) ...................................................................11

### RULES

Fed. R. Crim. P. 16 ...................................................................................................... *passim*

Fed. R. Crim. P. 16(a)(1)(G)....................................................................................1, 9, 13, 15

Fed. R. Crim. P. 16(a)(1)(G)(i)...........................................................................................8

Fed. R. Crim. P. 16(a)(1)(G)(iii)..................................................................................8, 9, 14

Fed. R. Crim. P. 16(b)(1)(C).............................................................................................16

Fed. R. Crim. P. 16(d)(2)...................................................................................................15

Fed. Rule of Evid. 701 ..................................................................................9, 10, 12

Fed. Rule of Evid. 702 ............................................................................ *passim*

## OTHER AUTHORITY

██████████████████████ ...............................................................................7

This is a highly technical case that relies for its theory of fraud on an interpretation of protocols, expectations, and transactions in a decentralized cryptocurrency trading system where all relevant trading occurred through pre-programmed computer code. Yet the government served *no expert disclosures* that would describe any testimony regarding (1) how the various computer programs were designed to function, (2) how the various computer programs operated in the transactions at issue, (3) the roles, rights, and obligations of the various participants in the trading environment, (4) the (disputed) explication of the software the government described at length in oral argument on June 17, or (5) any other expectations, norms, or protocols the Peraire-Buenos' alleged trading strategy violated. Instead, the government merely identified that it expects to elicit "percipient witness" testimony from three witnesses with specialized technical skills (and unidentified "others"), which presumably would cover those topics.[1]

There is no "percipient witness" exception to the government's obligation to provide appropriate disclosures for *any* witness whose testimony will implicate Federal Rule of Evidence 702. *See* Fed. R. Crim. P. 16(a)(1)(G). The government's approach flouts Rule 16(a)(1)(G) and the Court's scheduling order. The government's failure to provide adequate disclosures on the June 27, 2025 deadline also threatens the Peraire-Buenos' compliance with their upcoming expert disclosure deadline on July 18, 2025, and puts them in the untenable position of needing to choose whether to be the first to disclose expert testimony on the core technical issues in the case even though they neither have notice of the government's theories nor the burden of proof.

The Peraire-Buenos therefore respectfully move the Court for an order (a) compelling the government to satisfy its expert disclosure obligations under Rule 16(a)(1)(G) and (b) holding the

---

[1] The government's expert disclosure is attached as Exhibit A. This motion does not concern the cryptocurrency tracing testimony or forensic device extraction testimony identified in that disclosure. For this reason, Exhibit A does not include the tracing expert's report or its exhibits.

Peraire-Buenos' July 18 disclosure deadline in abeyance (except for with respect to cryptocurrency tracing or forensic device extraction testimony not at issue in this motion).  In the alternative, should the July 18 disclosure deadline remain in effect, the Peraire-Buenos respectfully request that the Court order expedited briefing on this motion.[2]

## BACKGROUND

### A.  The Government Indicts a Technical Case Based on an Allegedly Novel Cryptocurrency Trading Strategy.

The allegations in the Superseding Indictment ("Indictment"), ECF 70, put the function and design of several novel technologies front and center in this case.  Its first paragraph emphasizes that the Peraire-Buenos "studied mathematics and computer science at one of the most prestigious universities in the country" and alleges that they "us[ed] the specialized skills they developed through their education, as well as their expertise in cryptocurrency trading" to "exploit[] the integrity of the Ethereum blockchain."  Indict. ¶ 1.  This "Exploit" was allegedly "the very first of its kind," and supposedly "manipulated and tampered with the process and protocols by which transactions are validated and added to the Ethereum blockchain."  *Id.*

The Indictment contains several paragraphs of highly technical background allegations concerning the at-issue technologies.  *Id.* ¶¶ 4-15.  These allegations purport to define and explain concepts like "smart-contracts," the "mempool," and "maximum extractable value" or "MEV," that are foreign to even the most tech-savvy Americans.  *Id.*  The Indictment alleges that the "Victim Traders" are users of an "open-source software" (MEV Boost) who "scan[] the public

---

[2] The Peraire-Buenos defer to the Court on the appropriate time to permit the government to respond.  The Peraire-Buenos note that time is of the essence as the government's failure to comply with its disclosure obligations threatens to upend the Court's pretrial schedule and poses substantial prejudice to the Peraire-Buenos.  *See infra* Section II.  The Peraire-Buenos are submitting simultaneously herewith a letter motion regarding this request for interim relief.

mempool for profitable arbitrage opportunities using automated bots ('MEV Bots')," and who engage in complex, manipulative trades that depend on executing a series of sequential "transactions in a precise order" to extract a profit. *Id.*

The Peraire-Buenos are alleged to have thwarted certain of these trades through means technical and complex. According to the Indictment, the Peraire-Buenos used something called a "Malicious Validator" to "validate—and tamper with—the proposed block containing the Victim Traders' ordered transactions" after "exploit[ing] a vulnerability in … computer code." *Id.* ¶¶ 25-26. This supposed tampering allegedly "drained … particular liquidity pools of all the cryptocurrency that the Victim Traders had deposited based on their frontrun trades," allegedly in defiance of "the protocols of the Relay and the MEV-Boost system generally." *Id.* ¶ 26(b). The Indictment does not identify the specific protocols of the Relay or the MEV-Boost system, or of Ethereum, that were supposedly violated. Nor does it allege any promise by the Peraire-Buenos relating to them.

The Peraire-Buenos have moved to dismiss the Indictment because, among other reasons, the application of the wire fraud statute to this novel set of alleged facts violates the Due Process Clause. *See generally* ECF 49 at 10-19. The government has never disputed that the case is novel, or that it involves "new technologies," but instead has argued that "[s]ome case has to be the first." ECF 61 at 42; *see also* 6/17/25 Hr'g Tr. 32 (conceding that the "[crypto] space is new," and that the "cryptocurrency context … is so new and … is so evolving").

On June 17, 2025, the Court heard argument on several pending motions, including the Peraire-Buenos' motions to dismiss the Indictment and the government's motion for reconsideration of the Court's Order granting a *Franks* hearing. In its presentation, government counsel made numerous claims about "what the facts at trial will show," Tr. 49, concerning how

the technologies at issue were designed to, and did, function, and how users are "expected to behave," Tr. 50, when engaging with the technologies.  These claims include:

- The MEV-Boost software "was designed to do two things:  To keep traders' proposed trades, one, in order, and, two, to keep them private until a validator committed to publishing the trade on the blockchain in a particular order."  Tr. 45.

- MEV-Boost functions "similar to traffic rules" to alleviate "network congestion and disorder on the Ethereum network" by "add[ing] structure to that confusion, to provide predictability through rules."  Tr. 49-50.

- "The relay will not release the execution payload, the private transaction data to the validator for validation and block publication until the validator has confirmed through a digital signature that it will publish the proposed block as structured by the builder to the blockchain."  Tr. 46; *see also* Tr. 55 (describing this as "the normal course of events"); Tr. 55-56 ("The moment the validator sends a digital signature to a relay, as they did in this case, 'I promise to publish this block as structured by the block builder,' and they do not do that, that is a lie, that is a misstatement, and that goes to the wire fraud.").

- The relay's receipt and review of a digital signature functions "like an ID card.  It's a rectangle, and you have fields on it.  The fields have verifiable meanings.  What the relay was doing was just checking that the ID card was in the shape of a rectangle.  It was not actually checking that the fields were validly submitted."  Tr. 59; *see also* Tr. 63 (arguing that the Peraire-Buenos "submitted [a] valid public key, but the false information came in the parent and state root" fields, which were allegedly incorrectly populated).

- "Using the MEV-Boost software, the validator was not supposed to reorder the transactions at all."  Tr. 52.

The government argued that this information "was all sourced by the MEV-Boost software engineer" that the agent had spoken with before formulating his affidavit.  Tr. 58.[3]

## B.    The Government Urges Delay in Providing its Expert Disclosures.

The importance of expert testimony and the expert disclosure process in this complex case was first raised in connection with the pretrial schedule.  The parties submitted competing versions of the pretrial schedule when they were unable to agree on the timing for expert disclosures.  *See* ECF 44 (government submission); 45 (defense submission).  The Peraire-Buenos explained that "[b]ecause of the highly technical allegations in the Indictment, this complex case will certainly implicate retained expert testimony."  ECF 45 at 2.  The Peraire-Buenos therefore requested early, staggered expert disclosure deadlines (with the government disclosing its experts first, as Rule 16 contemplates) which would "serve an important role in identifying and narrowing the issues for trial and facilitating [the Peraire-Buenos'] preparation to meet the government's allegations."  *Id.* at 3; *see also id.* at 4 (seeking early identification of witnesses to allow motions practice to address potential issues with undisclosed expert testimony).

The government opposed both the staggered disclosures and the timing.  With respect to the timing, the government argued that a June 2, 2025 disclosure deadline was "impracticable" because "Rule 16 expert disclosures require, among other things 'a complete statement of all opinions that the government will elicit from the witness in its case-in-chief[.]'"  ECF 44 at 4

---

[3] The Peraire-Buenos disagree with virtually every opinion conveyed by government counsel about the functionality of the at-issue technologies, including normative claims about what certain software was "designed to do," what users like validators are "supposed to" do, or facile analogies of computer-programming commands between automated bots to "promise[s]" or traffic lanes in the analog world.  Although these arguments appear nowhere in the Indictment and were not articulated in the government's opposition to the Peraire-Buenos' motions, the government's presentation revealed that its case hinges on claims about how the at-issue technologies were designed to, and did, function during the alleged Exploit.

(quoting Fed. R. Crim. P. 16(a)(1)(G)).  The government further contended that a June 2 deadline would "impose[] an undue burden on the Government to finalize the contours of its expert testimony far in advance of trial."  *Id.*

The Court's pretrial scheduling order, ECF 46 (Scheduling Order), adopted the Peraire-Buenos' approach regarding the staggered disclosures and set a June 27, 2025 deadline for the government's expert witness disclosures.  Under the current schedule, the Peraire-Buenos' expert disclosures are due on July 18, 2025.  ECF 46 at 1.

### C.    The Government Provides Inadequate Disclosures on the Deadline.

At approximately 10:30 p.m. on its Friday, June 27, 2025 deadline, the government served its expert disclosure.  *See* Ex. A.  The disclosure concerned three categories of anticipated testimony, only the third of which is the subject of this motion.  First, it disclosed a retained expert whose testimony would be limited to "cryptocurrency tracing analyses performed in connection with this case."  *Id.* at 1.  Second, under the heading "Non-Expert Testimony," the government stated that it intended to call two members of the IRS-CI forensic extraction team to testify about how certain electronically stored information was extracted from devices allegedly belonging to the Peraire-Buenos.  *Id.* at 2.[4]

Third, also under the "Non-Expert Testimony" heading, the government wrote that it "intends to offer percipient testimony from ███████████████████, and others."[5]

---

[4] The Peraire-Buenos reserve the right to challenge this disclosure on the deadline for motions in the current schedule.  As explained below, this motion is limited to the "percipient witness" disclosures that will prejudice the Peraire-Buenos if not provided before the Peraire-Buenos' upcoming expert witness deadline.

[5] The government's disclosure did not name these "other" witnesses.  The government has designated the witnesses' names as Sealed Material under the protective order.  The Peraire-Buenos maintain that there is no valid basis for this designation but will defer any challenge to the designation until after the resolution of this motion.

*Id.* at 3. ██████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████ *See* Ex. A at 3.[6]  He is also likely the

"engineer" to whom the government "sourced" the claims made at the June 17 hearing.  *See supra*

p. 5.  The disclosure does not provide details as to the contents of the potential testimony.  While

it has made limited *Brady* disclosures, the government has not provided witness memoranda with

respect to these witnesses that would allow the Peraire-Buenos to assess the contents of the

testimony.

Although it labels this disclosure category "percipient witnesses," the short description

provided indicates that the testimony will include technical matters properly explored through

expert opinion testimony.  According to the disclosure, the witnesses may testify about "the April

2, 2023 exploit (the 'Exploit') as outlined in the Indictment, including relevant events before and

after the Exploit."  Ex. A at 3.  This testimony, according to the government, will "necessarily

require reference to and explanation of facts, based on their personal knowledge, experience, and

perception as Ethereum Consensus participants and MEV-Boost software users—and in the case

of ██████████████████████████████████████████████████████████."  *Id.*

The disclosure then lists several sub-topics of this potential testimony:

> Topic 1:  "the Ethereum Consensus network, including the once used proof-of-work (PoW) consensus protocol and later used proof-of-stake (PoS) consensus protocol"
>
> Topic 2:  "MEV-Boost software, including the roles of MEV-Boost participants such as searchers, block builders, relays, and validators, and proposer-builder separation (PBS) protocols as of April 2023"
>
> Topic 3:  "trading activity using MEV-Boost as of April 2023"

---

[6] *See also* ██████████████████████████████████████████████████

██████████████████

<u>Topic 4</u>:  "commonly used cryptocurrency terms which they may reference in their testimony, including, among others, decentralized exchanges, blockchains, blocks, block structure, the mempool, smart contracts, liquidity pools, automated market makers, and MEV"

Ex. A at 3.  These topics seem likely to involve testimony relating to many of the government's representations to the Court at the June 17 hearing about the functionality of various technologies at issue, the obligations of participants, and the mechanics of the alleged Exploit.  *See supra* p. 4.

On the morning of Monday, June 30, 2025, the Peraire-Buenos sent a letter to government counsel notifying them of the inadequacy of the disclosures.  Ex. B.  Counsel conferred in good faith by telephone on July 2, 2025, but were unable to reach an agreement.  *See* Trefz Decl.

## ARGUMENT

Federal Rule of Criminal Procedure 16 requires, upon the defendant's request, that the government disclose in writing certain information "for *any* testimony that the government intends to use at trial under Federal Rules of Evidence 702, 703, or 705 during its case-in-chief."  Fed. R. Crim. P. 16(a)(1)(G)(i) (emphasis added).  The disclosure must contain, "for each expert witness," among other things, "a complete statement of all opinions that the government will elicit from the witness in its case-in-chief" and "the bases and reasons for them."  Fed. R. Crim. P. 16(a)(1)(G)(iii).  "The Rule, which previously required only a 'written summary' of the expert's opinion, was amended in 2022 to require more specificity 'to facilitate trial preparation, allowing the parties a fair opportunity to prepare to cross-examine expert witnesses and secure opposing expert testimony if needed.'"  *United States v. Kwok*, 2024 WL 1773143, at *1 (S.D.N.Y. Apr. 24, 2024) (quoting Fed. R. Crim. P. 16, advisory committee notes to 2022 amendment).

The government has not even attempted to meet Rule 16's disclosure requirements with respect to the highly technical opinions that underlie its theory of fraud.  Its claim that Federal Rule of Criminal Procedure 16(a)(1)(G)(iii) and Federal Rule of Evidence 702 do not apply to the

type of testimony it plainly plans to introduce through ███████████████████ and

"others" is wrong and is inconsistent with its approach in other recent cases involving novel

technologies.  There can be no dispute that the government's June 27 "disclosure" with respect to

███████████████████ and "others" does not satisfy Rule 16(a)(1)(G)(iii)'s

requirement that opinions and their bases and reasons be disclosed.  In this complex and novel case

that threatens the Peraire-Buenos' liberty, neither the ends of justice nor the Court are well served

by efforts to game the rules or hide the ball.

## I.    THE COURT SHOULD ORDER THE GOVERNMENT TO PROVIDE DISCLOSURES CONSISTENT WITH RULE 16(a)(1)(G).

The government's failure to notice any expert testimony on issues surrounding the design

and function of the Ethereum and MEV-Boost protocols or on any of the technical issues

underlying the Indictment's allegations about the Exploit is irreconcilable with the law.  First, the

"topics" that it states it will cover through "percipient witnesses" indisputably will include expert

opinion, and there is no exception to Rule 702 for "percipient" witnesses.  Second, since significant

portions of this testimony will fall under Rule 702, Rule 16(a)(1)(G) and this Court's Scheduling

Order require pretrial disclosure of the opinions and their bases and reasons—not broad "topics."

### A.    Technical Opinion Testimony Falls Under Rule 702 Even When Offered Through a "Percipient" Witness.

Rules 701 and 702 govern admissibility of opinions.  Under Rule 701, a lay witness may

provide opinions "rationally based on the witness's perception" only if the opinions are "not based

on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R.

Evid. 701.  Rule 702, in turn, "governs the admissibility of expert and other scientific or technical

expert testimony."  *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002).

An opinion crosses the line between lay testimony under Rule 701 and expert testimony

under Rule 702 where it involves reasoning and knowledge "outside the ken of the average

person." *United States v. Garcia*, 413 F.3d 201, 216 (2d Cir. 2005). "[L]ay opinion testimony is limited to opinions that result from a process of reasoning familiar in everyday life." *United States v. Cabrera*, 13 F.4th 140, 149 (2d Cir. 2021) (citation omitted). If, instead, the "opinion rests in *any way* upon scientific, technical, or other specialized knowledge, its admissibility must be determined by reference to Rule 702, not Rule 701." *Id.* (citation omitted) (emphasis added).

Together, Rules 701 and 702 "eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Fed. R. Evid. 701, advisory committee's notes to 2000 amendments; *see Cabrera*, 13 F.4th at 149-50. To perform that function, the rules must apply the same way to fact witnesses and retained witnesses. *See, e.g.*, *Garcia*, 413 F.3d at 216. In *Garcia*, the Second Circuit held that testimony from a case agent was improperly admitted as lay opinion testimony where the agent's "reasoning process depended, in whole or in part, on his specialized training and experience." *Id.* It was irrelevant that the case agent had personal knowledge of the underlying facts based on his role in the investigation. *See id.*; *accord, e.g.*, *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1246 (9th Cir. 1997) ("The mere percipience of a witness to the facts on which he wishes to tender an opinion does not trump Rule 702."). Rather, a "court must focus on 'the reasoning process' by which a witness reached his proffered opinion," not solely on the source of his knowledge. *Garcia*, 413 F.3d at 215 (quoting 4 Weinstein's Federal Evidence § 701.03[1]). Courts thus regularly find that technical testimony by percipient witnesses falls under Rule 702. *See, e.g.*, *In re: Taxotere (Docetaxel) Prods. Liab. Litig.*, 26 F.4th 256, 264, 266 (5th Cir. 2022); *United States v. Ramirez*, 491 F. App'x 65, 73-74 (11th Cir. 2012); *Figueroa-Lopez*, 125 F.3d at 1246.[7]

_____

[7] *See also Bank of China, New York Branch v. NBM LLC*, 359 F.3d 171, 182 (2d Cir. 2004) (finding that portions of a banking investigator's testimony were properly admitted under Rule 701 as lay opinions but others were expert under Rule 702 where they "reflected specialized knowledge he

### B.    The Supposed "Percipient Witness" Testimony Will Contain Expert Opinions under Rule 702.

The supposed "percipient witness" testimony identified in the June 27 letter is highly technical and thus far "outside the ken of the average person." *Garcia*, 413 F.3d at 216. This is true for each one of the "topics" listed in the June 27 letter: "the Ethereum Consensus network" (topic 1); "the roles of MEV-Boost participants" and "proposer-builder separation (PBS) protocols" (topic 2); the nature of "trading activity using MEV-Boost as of April 2023" (topic 3); and an explanation of "cryptocurrency terms" like "the mempool, smart contracts, liquidity pools, automated market makers, and MEV" (topic 4). Ex. A at 3. Any exposition about what these concepts mean, or explanation how they relate to the alleged Exploit, will "reflect[] specialized knowledge [the witness] has because of his [or her] extensive experience in" the cryptocurrency industry, cryptography, and/or computer science. *Bank of China*, 359 F.3d at 182. Even the most basic description about the alleged Exploit "as outlined in the Indictment, including relevant events before and after the Exploit," Ex. A at 3, cannot be divorced from those bases of expertise because the Indictment allegations themselves are highly technical. *See supra* pp. 2-3. *Cf. United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) ("Particularly in complex cases involving the securities industry, expert testimony may help a jury understand unfamiliar terms and concepts.").

Nor can the government credibly argue that the testimony will not include opinions. The government's presentation at the June 17 hearing was chock-full of opinions that it said it would elicit at trial. *Supra* p. 4. Testimony that (a) the MEV-Boost software "was designed to do two

---

has because of his extensive experience in international banking"); *but see United States v. Rigas*, 490 F.3d 208, 225 (2d Cir. 2007) (accountant's opinions were lay testimony where they were limited to what company's books showed and not whether they reflected "appropriate accounting techniques"); *United States v. Cuti*, 720 F.3d 453, 459 (2d Cir. 2013) (Rule 702 not applicable to purely factual, as opposed to opinion, testimony).

things," (b) that MEV-Boost functions "similar to traffic rules," (c) that a digital signature functions like a "promise to publish this block as structured by the block builder," (d) that the fields in a digital signature have "verifiable meanings," (e) that the allegedly False Signature contained "false information … in the parent and state root fields," or (f) that "using the MEV-Boost software, the validator was not supposed to reorder the transactions at all" is expert opinion testimony.[8]  *See, e.g.*, *Bank of China*, 359 F.3d at 182 (holding that banking investigator's "explanations regarding typical international banking transactions or definitions of banking terms, and any conclusions that he made" based on his banking expertise and "not a result of his investigation" were expert opinion testimony under Rule 702); *Marx & Co., Inc. v. Diners' Club Inc.*, 550 F.2d 505, 508 (2d Cir. 1977) ("Friedman was qualified as an expert in securities regulation, and therefore was competent to explain to the jury the step-by-step practices ordinarily followed by lawyers and corporations in shepherding a registration statement through the SEC. Indeed, Friedman had done so as an expert witness on previous occasions.").

To be sure, the "percipient witnesses" may offer some testimony that is purely factual or even lay opinion testimony under Rule 701.  Hybrid fact-expert witnesses are common.  *See, e.g.*, *Bank of China*, 359 F.3d at 182.  But given the technical nature of the Indictment's allegations and the government's representations to the Court regarding what the evidence at trial will show, it is incredible for the government to suggest that it will elicit *no* testimony falling under Rule 702 from the witnesses identified.  Consider ████████ whose designation principally as a "percipient witness" is especially suspect.  The June 27 letter acknowledges that the government intends to elicit testimony from ████████████████████████████████

---

[8] Some of this testimony may constitute impermissible legal conclusions.  *See, e.g.*, *Bilzerian*, 926 F.2d at 1294-95.  This motion does not concern that issue; what matters here is that this testimony is likely to include inferences, conclusions, and opinions that fall under Rule 702.

███████████████████████████████████████████████████████

██████████████████████████████████████ If the elicited testimony uses that experience to assess or inform testimony concerning the events alleged in the Indictment, that testimony falls under Rule 702. *See Bank of China*, 359 F.3d at 182. ████████████████████████████ raise similar concerns given their specialized knowledge and their likely roles in describing how various computer programs at issue purportedly functioned.

The government's disclosure here is notably at odds with its approach in other recent technical cases. For example, in *United States v. Eisenberg*, No. 23-cr-10 (AS) (S.D.N.Y.), the government disclosed under Rule 16(a)(1)(G) an expert who would, among other things: (a) "define and provide a general overview of cryptocurrencies and the blockchain"; (b) "define and provide a general overview of the economic features of and uses for stablecoins in the cryptocurrency market"; (c) "explain the concepts and economics of derivatives contracts, futures contracts, spot exchanges, and swaps in commodities and foreign exchange markets"; and (d) "describe the Mango Market user interface through which customers traded cryptocurrency and cryptocurrency derivatives." Ex. C (ECF 78-1) at 4-5. The government disclosed another expert to cover similar topics and the "the economic implications" of Mr. Eisenberg's alleged behavior. *See id.* at 9.

The government took a similar approach in *United States v. Storm*, No. 23-cr-430 (KPF) (S.D.N.Y.), disclosing expert testimony about some of the same technologies at issue in this case, including opinions about how the Ethereum Network functions. *See* Ex. D (ECF 158-1). The government's expert in *Storm* was disclosed to testify on, among other topics, how certain "transactions are recorded on a public ledger known as the 'Ethereum blockchain,' which is stored on the nodes that make up the Ethereum peer-to-peer network," how "the Ethereum blockchain

only reflects the movement of funds between anonymous or pseudonymous Ethereum addresses," and the function of "smart-contracts" on the Ethereum blockchain. *Id.* at 3.

There is no principled difference between the technical issues requiring these disclosures in *Eisenberg* and *Storm*,[9] including on some of the same blockchain technologies at issue here. For the reasons already stated, to the extent the government is relying on the mere "percipience" of the witnesses to certain events relating to the case, that distinction is legally meaningless. *See supra* pp. 9-10. Like in *Eisenberg* and *Storm*, the government's theory here unquestionably requires expert disclosures.

### C.    The Disclosures Fail to Identify the Opinions or the Bases or Reasons.

The June 27 letter's description of the "percipient witness" testimony plainly fails Rule 16's requirements. It discloses no opinions and no bases or reasons. *Contra* Fed. R. Crim. P. 16(a)(1)(G)(iii).

The Peraire-Buenos do not anticipate that the government will argue that the June 27 letter satisfies Rule 16 and, therefore, will not dwell on the issue. Should there be any doubt, however, the Peraire-Buenos note that it is well established that disclosing a list of topics is insufficient under Rule 16. *See, e.g.*, *United States v. Duvall*, 272 F.3d 825, 828-29 (7th Cir. 2001) ("The government's notice provided a list of the general subject matters to be covered, but did not identify what opinion the expert would offer on those subjects."); *Kwok*, 2024 WL 1773143, at *2 (disclosure that listed topics but did "not indicate [the expert's] actual opinions on these topics" was inadequate); *United States v. Gentile*, 2024 WL 3251702, at *2 (E.D.N.Y. June 20, 2024) (similar).

---

[9] The Peraire-Buenos take no position on whether the disclosures in these cases sufficiently disclosed the experts' opinions or their bases and reasons.

The list of topics in the June 27 letter are similar to, and even more threadbare than, those that courts recently have found facially deficient.  In *Kwok*, for example, the disclosure of the following topics failed Rule 16:  "what a cryptocurrency is," "the characteristics of [H Dollar] and [H Coin] as cryptocurrencies," "typical practices given the lack of comprehensive regulation of cryptocurrency exchanges," and "what stablecoins are."  2024 WL 1773143, at *2.  The court in *Gentile* reached the same conclusion regarding a notice that an expert would testify regarding "the accounting practices related to establishing contractual arrangements," "the methods to determine funds from operations using ... the financial statements," and "[h]is analysis and tracing related to the 2014 performance guarantees."  2024 WL 3251702, at *2.  The government must do more than notice topics; under Rule 16, it must disclose the opinions and their bases and reasons.

## II.    THE COURT SHOULD HOLD DEFENDANTS' DISCLOSURE DEADLINE IN ABEYANCE OR, ALTERNATIVELY, ORDER EXPEDITED BRIEFING.

Where a party fails to comply with Rule 16's disclosure requirements, "a district court has broad discretion in fashioning a remedy," *United States v. Lee*, 834 F.3d 145, 158 (2d Cir. 2016) (citation and alterations omitted), including by "enter[ing] any … order that is just under the circumstances," Fed. R. Crim. P. 16(d)(2).  Here, the Peraire-Buenos request that the Court order the government to promptly provide actual Rule 16(a)(1)(G) disclosures with respect to █████████ ████████████████, and "others."  *See Kwok*, 2024 WL 1773143, at *3 (ordering defendant to "supplement his expert disclosures to provide a 'complete statement of all opinions' and 'the bases and reasons for them'" within five days of its order (quoting Fed. R. Crim. P. 16(b)(1)(C)(iii))).  To facilitate that relief, the Peraire-Buenos further respectfully request that the Court issue an order holding the Peraire-Buenos' July 18 disclosure deadline in abeyance pending resolution of this motion to compel (except with respect to the topics of cryptocurrency tracing and device extraction).  In the alternative to abeyance, the Court should order expedited briefing on this

motion.  The Peraire-Buenos are submitting simultaneously with this motion a letter motion relating to that interim relief.

This interim relief is necessary considering the upcoming deadline for defense expert disclosures and to effectuate the Scheduling Order.  In setting the pretrial schedule, the Court entered staggered disclosure deadlines, as provided by Rule 16, over the government's objection. ECF 46; Fed. R. Crim. P. 16(b)(1)(C); *see* ECF 45 at 3.  The government's failure to honor its disclosure obligations effectively undoes that aspect of the Court's Order.

Moreover, it would seriously prejudice the Peraire-Buenos for them to have to comply with that deadline where the government has failed to make a sufficient disclosure of its own.  For one, Rule 16's various disclosure requirements serve important functions with respect to the government's potential proof in this case.  This is particularly essential here, where neither the Indictment nor the government's disclosures to date identify the protocols and expectations the Peraire-Buenos are alleged to have thwarted in this novel and complex case.  Without such disclosures, the Peraire-Buenos cannot be expected to be prepared to respond to the government's case, including by making responsive Rule 16 disclosures under the pretrial schedule.

Second, as discussed above, Rule 16 requires a "complete statement of all opinions" falling under Rule 702 and "the bases and reasons for them."[10]  If the Court were to grant the Peraire-Buenos' motion to compel after the Peraire-Buenos have already provided their disclosures, the government, which bears the burden of proof in this case, not only will have had the benefit of the Peraire-Buenos' disclosures when crafting its own case-in-chief but will have hindered the Peraire-

---

[10] Under Rule 16(b)(1)(C), a defendant's disclosure obligations only arise after the government has complied with its disclosure obligations.  Accordingly, considering the government's failure to comply with its obligations, the Peraire-Buenos would be within their rights to provide no disclosures on July 18.  The Peraire-Buenos, however, prefer to seek the Court's relief from this deadline while the parties litigate their dispute over the scope of the government's obligations.

Buenos' ability to provide responsive disclosures.  As the Peraire-Buenos explained in connection with the briefing on the pretrial schedule:  Rule 16 contemplates an initial disclosure by the government, a responsive disclosure by the defense, and a potential rebuttal disclosure from the government, mirroring the order of proof in a criminal case.  ECF 45 at 3.  The government should not profit from its failure to comply with Rule 16 and the Court's Scheduling Order.

## CONCLUSION

The Court should hold the Peraire-Buenos' upcoming July 18 expert disclosure deadline in abeyance or, alternatively, set an expedited briefing schedule on this motion such that any compelled disclosures are served sufficiently in advance of the July 18 deadline that the Peraire-Buenos may make responsive disclosures.  Upon completion of briefing, the Court should grant the motion to compel adequate Rule 16 disclosures.

Date: July 2, 2025

By: */s/ Katherine Trefz*

Katherine Trefz (*pro hac vice*)
Daniel Shanahan (*pro hac vice*)
Patrick J. Looby (*pro hac vice*)
Williams & Connolly LLP
680 Maine Avenue SW
Washington, DC 20024
Tel: (202) 434-5000
ktrefz@wc.com
dshanahan@wc.com
plooby@wc.com

Jonathan P. Bach
Shapiro Arato Bach
1140 Avenue of the Americas
17th Floor
New York, NY 10036
Tel: 212-257-4897
jbach@shapiroarato.com

*Counsel for Defendant*
*James Peraire-Bueno*

Respectfully submitted,

By: */s/ Daniel N. Marx*

Daniel N. Marx
William W. Fick (*pro hac vice*)
Fick & Marx LLP
24 Federal Street, 4th Floor
Boston, MA 02110
Tel: 857-321-8360
dmarx@fickmarx.com
wfick@fickmarx.com

*Counsel for Defendant*
*Anton Peraire-Bueno*

17

**CERTIFICATE OF SERVICE**

I hereby certify that on July 2, 2025, I electronically filed the foregoing document with the

Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel

of record in this matter who are on the CM/ECF system.


*/s/ Katherine Trefz*
Katherine Trefz