**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br>v.<br><br>ANTON PERAIRE-BUENO, and JAMES PERAIRE-BUENO,<br><br>          Defendants. | Case No.:  1:24-cr-00293-JGLC |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
JOINT MOTION TO EXCLUDE CERTAIN POST-TRADE
<u>GOOGLE SEARCH HISTORY</u>**

**TABLE OF CONTENTS**

BACKGROUND ..................................................................................................................2

ARGUMENT......................................................................................................................3

I.      The Google Searches Are Irrelevant....................................................................4

II.     The Post-Exploit Legal Searches Are Unfairly Prejudicial Because They Unfairly Pressure the Peraire-Buenos to Waive Privilege to Explain Them......................8

CONCLUSION..................................................................................................................10

Pursuant to Federal Rules of Evidence 401, 402, and 403, Defendants James and Anton Peraire-Bueno respectfully move to exclude evidence of Google searches for seemingly legal topics that the Peraire-Buenos conducted after the alleged Exploit, identified in the attached Appendix A (the "post-Exploit legal searches"). The government has argued, through the Superseding Indictment ("Indictment") and its pleadings, that it plans to use these searches to show the Peraire-Buenos' alleged fraudulent intent and knowledge that their conduct was criminal.

As explained herein, these searches show no such thing, and any such argument based on them would be speculative. For the government to argue its preferred inference (*i.e.*, consciousness of guilt of the alleged crimes), the government would first need to establish that any given search was connected to this case. *See* Fed. R. Evid. 104(b). But the contents of the searches themselves do not show that. And even if that conditional relevance problem were overcome, the searches are so inherently ambiguous that they are not probative of anything. *See* Fed. R. Evid. 401, 402. Further, the substantial risk of confusion, undue delay, and unfair prejudice from such evidence substantially outweighs any probative value. *See* Fed. R. Evid. 403.

Separately and even more important, introduction of this evidence would improperly burden the Peraire-Buenos' attorney-client privilege. As the government has long been aware, the Peraire-Buenos retained legal counsel shortly after being threatened by anonymous sandwich attackers. As explained below, the dates of many of the post-Exploit legal searches and the dates of the Peraire-Buenos' conferrals with counsel during this period match up. If there is a connection between the searches and the issues in this case, at least one equally (or more) plausible explanation for many of the searches exists (*i.e.*, that the Peraire-Buenos were researching topics in connection with their legal consultation after being threatened by the anonymous sandwich attackers). But the Peraire-Buenos could not substantiate that explanation at trial (or even in this motion) without

1

waiving privilege. The government is no doubt aware of the Peraire-Buenos' predicament. Indeed, the evidence seems designed to force that choice. As the Second Circuit has held, this Court can and should consider this unfair pressure on the attorney-client privilege when deciding whether to admit the (at best) minimally probative evidence. For all these reasons, the Court should exclude the post-Exploit legal searches pursuant to Rule 403.

## BACKGROUND

On April 10, 2023, one week after the alleged "Exploit," Tether—or, rather, the company that issues the Tether cryptocurrency often referred to as USDT—"blacklisted" the Peraire-Buenos' "Gnosis vault"—*i.e.*, the cryptocurrency wallet into which they had deposited the proceeds of their trading strategy. The following day, one of the alleged victims sent the Peraire-Buenos' validator account an anonymous message claiming responsibility for the freeze and threatening to expose their identity if they did not negotiate. In connection with responding to this threatening message, as the government knows, the Peraire-Buenos retained legal counsel.

As the government also knows, the alleged victim sandwich attackers proceeded in subsequent weeks to identify and threaten the Peraire-Buenos and demand the Peraire-Buenos return the funds, all the while refusing to identify themselves. Those threats included legal action. In the course of discovery in this matter, the Peraire-Buenos have provided the government with privilege logs for withheld communications that identify the dates, participants, and Bates numbers for documents reflecting the Peraire-Buenos' conferral with counsel during the time period they were being threatened by the sandwich attackers. *See infra* p. 10. The Peraire-Buenos also had counsel advising them on items related to their cryptocurrency trading business, including corporate structure and taxes. The privilege logs identified those communications as well.

The Superseding Indictment ("Indictment") highlights various Google searches allegedly performed during the time after the alleged Exploit when the Peraire-Buenos were being advised

2

by counsel. The government has also identified these and other Google searches on its preliminary case-in-chief exhibit list. The Google searches identified in the Indictment appear to seek legal information: The Indictment alleges, for example, that Anton Peraire-Bueno searched for "top crypto lawyers," "how long is us statue [*sic*] of limitations," "wire fraud statute / wire fraud statue [*sic*] of limitations," and "money laundering statue [*sic*] of limitations." ECF 70 ¶ 29. It further alleges that in October and November 2023, during the time period when the Peraire-Buenos off-ramped proceeds of the alleged Exploit (*i.e.*, converted them from cryptocurrency to U.S. dollars), James searched for "money laundering," "computer fraud abuse act," and "does the united states extradite to [foreign country]." *Id.* ¶ 32. Documents on the government's exhibit list include most[1] of these searches plus others in this vein, including for "crypto court cases" in various jurisdictions, "spain cybercrime statutes," and "right to trial by jury united states."

The government has signaled that it will seek to introduce these types of searches at trial as evidence of the Peraire-Buenos' intent and knowledge. In its Opposition to Defendants' Motions to Dismiss the Indictment, for example, the government argued that the Peraire-Buenos' online searches for "the very criminal statutes for which they were later indicted" "expose[s]" their "actual awareness of the criminality of their conduct." ECF 61 at 40; *see also* ECF 97 at 2.

## ARGUMENT

The Court should exclude the post-Exploit legal searches identified in Appendix A.[2] These searches are inadmissible on several grounds. First, without context, the searches are irrelevant

---

[1] The government's preliminary exhibit list does not include the search for "top crypto lawyer." In a pre-filing conferral, the government indicated that this omission was intentional for now. Because the Indictment alleges that search, the Peraire-Buenos include it in this motion.

[2] The Peraire-Buenos reserve the right to add further searches to this request. Today's government filing, ECF 125, refers to several alleged Google searches that were not included on the government's preliminary exhibit list and to which the defendants do not yet have access.

and are mere invitations to speculate. *See* Fed. R. Evid. 401, 402. For the same reason, they are inadmissible under Federal Rule of Evidence 403. These evidentiary problems would inhere to any context-less Google search that the government may seek to admit at trial, and the Peraire-Buenos may object to the admission of any given search on these grounds. But this motion concerns only a subset of the Google searches on the government's preliminary exhibit list—*i.e.*, the post-Exploit legal searches included at Appendix A—because they are subject to an additional, independent, and uniform basis for exclusion: their admission would unfairly burden the Peraire-Buenos' attorney-client privilege. For the reasons explained below, their admission would force a choice between standing on their privilege rights or letting the government's speculative use of the searches go unrebutted. Because the searches are at best minimally probative under the government's relevance theory, this unfair pressure is more than sufficient reason to exclude them.

I.    **The Google Searches Are Irrelevant.**

Although the searches are categorically inadmissible under Rule 403 even if they were minimally relevant for reasons explained below, the government will struggle even to establish relevance to the Peraire-Buenos' knowledge or intent. On their face, the search history screenshots provide no information beyond the search terms themselves, the dates of the searches, and on some occasions a site or two visited. *See generally* App. A. The searches are shorn of all other context. This poses two problems for the government's relevance theory.

*First*, the government's argument that the searches reflect consciousness of guilt of the alleged crimes is premised on the assumption that the searches have any connection with the case. Under Federal Rule of Evidence 104(b), the government must establish this preliminary fact for each search. *See* Fed. R. Evid. 104(b); *United States v. Dawkins*, 999 F.3d 767, 789 (2d Cir. 2021). In *Dawkins*, a bribery case, the Second Circuit affirmed the exclusion of evidence that the defendant "was overheard on separate occasions, speaking on the telephone and telling his

4

interlocutor: 'Do not accept money from these people.'" *Id.* at 789. As the Second Circuit observed, those statements were exculpatory only if the "money" and "people" the defendant mentioned concerned the alleged bribery. *See id.* The defendant attempted to prove the connection through the content of the statements themselves and the approximate dates of the calls. *Id.* The district court rejected this "meagre proffer," and the Second Circuit affirmed. *Id.*

The government here similarly cannot establish the required preliminary connection from the face of the documents, which are ambiguous and contain no factual link to the alleged crimes. The searches at issue are not searches for sandwich attacks, MEV-Boost, "unbundling," etc. Rather, they reflect searches for legal statutes and other broad concepts that could relate to anything. *See* App. A. Moreover, like the defendant in *Dawkins*, the government has no witness who could provide the missing context. *See* 999 F.3d at 789 (noting that the defendant "did not proffer" that such witnesses "could have testified about who was on the other end of these phone calls, or to whom [the defendant] was referring when he said 'these people'"). The government presumably will offer the searches through a case agent who does not know the context and thus cannot make a proffer that would distinguish this case from *Dawkins*.

To be clear, the government must establish that *each* search it seeks to admit relates to the case to satisfy Rule 104(b). Without more than the search terms themselves and the fact that they took place sometime after the alleged Exploit, the government will not be able to satisfy their burden. As *Dawkins* demonstrates, Rule 104(b) requires more than imprecise timing and speculation about inherently ambiguous language. And it may be that additional context, where available, *defeats* the government's speculation. Take, for example, three searches on October 10, 2023 for "proffer agreement vs. cooperation agreement," "charge by indictment vs. charge by complaint," "5K letter / charge by indictmnet [*sic*] vs. charge by complaint." Ex. 6. The

5

government's inclusion of these searches on its preliminary exhibit list suggests its view that they are self-evidently about this case. But October 10, 2023, was the date that Caroline Ellison, after having waived the right to indictment, testified in the highly publicized prosecution of Sam Bankman-Fried pursuant to a cooperation agreement promising an application under U.S.S.G. § 5K1.1. *See* 10/10/23 Tr. 602-03, *United States v. Bankman-Fried*, 22-cr-673-LAK (S.D.N.Y.). In this context, any claim that these searches are relevant to the Peraire-Buenos' state of mind in this case is revealed for what it is—a baseless assumption.[3] But Rule 104(b) requires more than assumption; as *Dawkins* shows, it requires actual proof.

*Second*, even if the Court were to accept that some of the searches did relate to this case, the government's relevance theory still fails because the searches are inherently ambiguous. A search for "wire fraud statu[t]e" or something similar is just as plausibly construed as evidence that the searcher confirmed his understanding that he *did not* violate that law than to be construed the other way. Only in the eyes of the government, convinced of a defendant's guilt, is the inculpatory explanation more compelling. But why is that so? The search (and the others subject to this motion) occurred *after* the alleged fraud. The government can offer no evidence of what prompted the search, the set of results that were returned, or in many examples a single site visited. For the most part, the government offers only the fact of the search itself. In other contexts, the Supreme Court has recognized that evidence that can be so easily spun in either direction has no or very little probative value concerning a defendant's state of mind. *See Doyle v. Ohio*, 426 U.S.

---

[3] Similarly, a December 1, 2023 search for "french court dismisses charges against platypus," Ex. 7, occurred the same day that the news broke, making it substantially more likely the search was associated with current crypto news than anything having to do with the alleged Exploit. *See* https://www.binance.com/en/square/post/820264016625. The Peraire-Buenos have not included the October 10 or December 1 searches in Appendix A because the publicly available context conclusively refutes the government's intended use of these searches. Because the searches are obviously irrelevant, the Court nevertheless should exclude them (now or at a later time).

610, 619 (1976) (holding that a defendant's post-arrest silence after being read his *Miranda* rights was "insolubly ambiguous" and thus not probative of guilt); *United States v. Hale*, 422 U.S. 171, 1777 (1975) ("[Defendant's] failure to offer an explanation during the custodial interrogation can as easily be taken to indicate reliance on the right to remain silent as to support an inference that the explanatory testimony was a later fabrication. There is simply nothing to indicate which interpretation is more probably correct."). Although the context is different, the Court's observation on probative value applies here and makes sense: evidence that amounts to nothing more than speculation, one way or the other, is not evidence at all.

The remainder of the post-Exploit legal searches suffer from the same problem. A search for a constitutional right of course does not indicate a consciousness of guilt. App. A at GX 1178. Searches for other cryptocurrency prosecutions are even further afield, *see* App. A at GX 1134; without a showing that the conduct in those cases was similar to that alleged here, the likely search results would *defeat* the government's preferred interpretation by confirming that nothing like *this* case has ever been charged.[4] (Nor is the fact that the government *alleged* someone else committed some other crime involving cryptocurrency probative of whether the charged defendant, presumed to be innocent, is guilty. The government can allege whatever it wants.)

Without context, it is hard to understand how any of these searches has any relevance. At a minimum, the evidence encourages rank speculation and thus poses unfair prejudice to the Peraire-Buenos and is therefore inadmissible under Federal Rule of Evidence 403. And as the October 10, 2023 searches that are plainly about the Bankman-Fried trial show, every admitted

---

[4] The government's press release announcing the charges here emphasized that this is true. *See* https://www.justice.gov/usao-sdny/pr/two-brothers-arrested-attacking-ethereum-blockchain-and-stealing-25-million.

7

search could result in a mini trial about the context to disprove the government's baseless speculation that would needlessly prolong the trial.

## II. The Post-Exploit Legal Searches Are Unfairly Prejudicial Because They Unfairly Pressure the Peraire-Buenos to Waive Privilege to Explain Them.

Whatever minimal probative value the post-Exploit legal searches possess is far outweighed by the risk of unfairly prejudicing the Peraire-Buenos. The evidence puts the Peraire-Buenos in the unfair position of potentially needing to waive attorney-client privilege and work product in order to counter an inflammatory and speculative narrative. As noted above (and as the government knew long before the Indictment), the Peraire-Buenos retained legal counsel after the alleged Exploit, after they began to be threatened by the anonymous sandwich attackers. All of the searches identified in Appendix A occurred during that time period of legal consultation and are the kinds of topics that might arise in conversations with legal counsel. If so, the searches may have completely reasonable, even exculpatory, explanations, but in order to provide those explanations, the Peraire-Buenos would have to waive their attorney-client privilege.

The Second Circuit has stated that pressure on a defendant's attorney-client privilege can be a basis for excluding minimally probative evidence. *See United States v. McKeon*, 738 F.2d 26 (2d Cir. 1984). In *McKeon*, the court considered whether the prosecution may introduce, as a party-opponent statement under Rule 801(d), parts of defendant's counsel's opening statement in a previous trial that contradicted the defendant's position on re-trial. *Id.* at 31-32. The court affirmed the evidence's admission but ruled that such a statement is not admissible in all circumstances, partly because "where an innocent factual explanation" exists, "the defendant may have to choose between forgoing the explanation or facing the introduction of a prior criminal record for impeachment purposes and waiver of the attorney-client privilege." *Id.* at 32. Offering the explanation at a hearing outside the jury's presence could also be insufficient, the court added,

8

because it "may expose work product, trial tactics or legal theories to the prosecution"—generating "Hobson's choices" that "may thus seriously impair the defense." *Id.* at 32. The same concerns exist here and are properly considered under Rule 403. *See, e.g.*, *United States v. Doyle*, 2018 WL 1902506, at *15 (S.D.N.Y. Apr. 19, 2018) ("[M]any of the concerns discussed in *McKeon* necessarily animate a court's 'sensitive' analysis under Rule[] 403 . . . .").[5]

The Peraire-Buenos are even put in a difficult position when bringing this motion. Unless ordered to do so by the Court with appropriate privilege protections, they cannot disclose whether and how the Google searches in fact track the content of their privileged communications. As a showing of good faith, however, and without representing the contents of the communications listed, the Peraire-Buenos provide the following privilege-log level information comparing the Google searches to dates of attorney communications:

| Search | Privilege Log Level Information |
|---|---|
| 4/11/2023: "Top crypto law firms" / top "crypto lawyers" (Indict. ¶ 29) | 4/11/2023: Communications with potential counsel seeking legal representation in connection with prior cryptocurrency trades. |
| 4/13/2023: "Statue of limitations" / "how long is us statute of limitations" | 4/13/2023: Communications with counsel regarding potential legal issues related to prior cryptocurrency trades. |
| 4/21/2023: "Wire fraud statute" / "wire fraud statute of limitations" | 4/21/2023: Communications with counsel regarding potential legal issues related to prior cryptocurrency trades. |
| 4/26/2023: "Money laundering statute of limitations" | 4/25/2023: Communications with counsel regarding potential legal issues related to prior cryptocurrency trades. |

---

[5] The concerns expressed in *McKeon* and *Doyle* are exemplary of courts' disapproval of tactics that turn defendants' exercise of their constitutional rights and/or historically recognized privileges against them. *See, e.g.*, *Griffin v. California*, 380 U.S. 609, 615 (1965) (commenting on a defendant's right to invoke privilege against self-incrimination); *Marshall v. Hendricks*, 307 F.3d 36, 71 (3d Cir. 2002) ("[W]e think it clear that [*Griffin's* reasoning] applies when other enumerated rights are implicated" by a prosecutor's improper statements, including the right to counsel).

| Search | Privilege Log Level Information |
|---|---|
| 6/14/2023: "what does coinbase use for on chain security checks trm labs" / "chainalysis hacks dataset" | 6/14/2023: Communications with counsel regarding potential legal issues related to prior cryptocurrency trades |
| 9/27-10/23/2023: Various searches, including:<br><br>9/27/2023: "DHS" / "irs-ci" / "AUSA" / "can your device be searched without a lawyer"<br><br>10/20/2023: "computer fraud and abuse act" / Visited: NACDL – Computer Fraud and Abuse Act (CFAA) | 9/26/2023, 10/20/2023: Communications with counsel regarding potential legal issues related to prior cryptocurrency trades. |
| 11/16/2023: "can you report a tax loss on stolen property" / "crypto theft deductible" / Visited: Can I Write Off Lost, Stolen, & Scammed Crypto on My Taxes | 11/16/2023: Communications with counsel regarding internal affairs of Birch Bark LLC. |
| 11/21/2023: various searches related to law and extradition, including: "right to trial by jury united states" / "is an extradition trial a criminal trial" / "does the united states extradite to israel" | 11/20/2023: Communications with counsel regarding potential legal issues related to prior cryptocurrency trades. |

*See* Ex. 8 (relevant excerpts of privilege logs).

The Google searches identified in Appendix A have minimal to no probative value concerning the Peraire-Buenos' alleged intent and knowledge and present a serious risk of unfair prejudice. The Court should not permit the government to invite speculative inferences from this evidence while putting the Peraire-Buenos in the unfair position of deciding whether they must waive privilege or forgo a potential defense.

## CONCLUSION

For the foregoing reasons, the Court should exclude at trial the post-Exploit Google searches identified in Appendix A.

Date: August 22, 2025                                   Respectfully submitted,

By: */s/ Katherine Trefz*                                By: */s/ Daniel N. Marx*

Katherine Trefz (*pro hac vice*)                         Daniel N. Marx
Daniel Shanahan (*pro hac vice*)                         William W. Fick (*pro hac vice*)
Patrick J. Looby (*pro hac vice*)                        Fick & Marx LLP

10

Williams & Connolly LLP
680 Maine Avenue SW
Washington, DC 20024
Tel: (202) 434-5000
ktrefz@wc.com
dshanahan@wc.com
plooby@wc.com

Jonathan P. Bach
Shapiro Arato Bach
1140 Avenue of the Americas
17th Floor
New York, NY 10036
Tel: 212-257-4897
jbach@shapiroarato.com

*Counsel for Defendant
James Peraire-Bueno*

24 Federal Street, 4th Floor
Boston, MA 02110
Tel: 857-321-8360
dmarx@fickmarx.com
wfick@fickmarx.com

*Counsel for Defendant
Anton Peraire-Bueno*

11

## CERTIFICATE OF SERVICE

      I hereby certify that on August 22, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record in this matter who are on the CM/ECF system.

      */s/ Katherine Trefz*
      Katherine Trefz