IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br>v.<br><br>ANTON PERAIRE-BUENO, and JAMES PERAIRE-BUENO,<br><br>      Defendants. | Case No.:  1:24-cr-00293-JGLC |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
JOINT MOTION TO EXCLUDE CERTAIN NEWS ARTICLES**

## **TABLE OF CONTENTS**

BACKGROUND ............................................................................................................................1

ARGUMENT .................................................................................................................................3

I.      The Articles Are Hearsay Without an Exception. ..............................................................3

II.     The Articles Are Unfairly Prejudicial. ................................................................................4

CONCLUSION ..............................................................................................................................6

i

Defendants James and Anton Peraire-Bueno respectfully move to exclude at trial news articles about the events charged in this case or in other cryptocurrency cases that appear on the government's preliminary exhibit list. The government's witness list does not include any of the articles' authors. The government thus faces an insurmountable hearsay hurdle at the threshold—without testimony from their authors, the articles are wholesale inadmissible. *See Larez v. City of Los Angeles*, 946 F.2d 630, 642 (9th Cir. 1991). Many of the articles also contain additional layers of hearsay that qualify for no exception. And even if the government could overcome these hearsay challenges, the articles' often opinionated commentary and inflammatory description of the events of April 2, 2023, would render them inadmissible under Rule 403.

## BACKGROUND

The government's preliminary exhibit list contains several news articles concerning the events underlying this case and other cases involving cryptocurrency. The government's witness list does not include any of the authors of these articles or the individuals the articles quote. A compendium of the government exhibits subject to this motion is attached as Exhibit 4.[1] The hearsay and unfair prejudice issues these articles pose is self-evident. A few examples thus suffice to demonstrate these points.

*Articles about this case*. GX 401 is an article by Ryan S. Gladwin titled "'Sandwich the Ripper' MEV Exploiter Joins Tether's Graveyard of Blacklisted Addresses." Ex. 4 at 2.[2] It purports to report on the decision by Tether to "blacklist[]" an account associated with the alleged

---

[1] The government's preliminary exhibit list contains many redundant exhibits. As a result, many of the subject articles repeat across several government exhibits. The Peraire-Buenos have attached only one instance of each article in Exhibit 4.

[2] Citations to Exhibit 4 refer to the page number of the ECF filing rather than Bates numbers available on some of the government exhibits.

1

Exploit. *Id.* In doing so, it makes several loaded claims that echo the government's allegations: that the events alleged in the Superseding Indictment ("Indictment") were a "multi-million-dollar exploit," that the funds at issue were "stolen," and that "someone sent a transaction to bait the bots to attempt a sandwich trade." *Id.* at 3. It also contains what purport to be quotations from two unnamed individuals: a "spokesperson from PeckShield," who opines that the "attacker" "found a bug in mev-boost-relay"; and a "Tether representative," who purportedly said that "Tether routinely works with law enforcement agencies around the world" and implies that the decision to "temporarily freeze funds" was done pursuant to an "official request[]" from law enforcement. *Id.* at 4; *see also, e.g.*, *id.* at 46 (GX 6038) (opinion piece in support of Tether's freeze).

GX 403 is an article with no named author titled "How Did a Malicious Validator Steal $20 Million from MEV Bots by Attacking Ethereum MEV Boost Relay." *Id.* at 23. It contains a darkly lit and nefarious image of a hooded figure seated before multiple computer screens, and graphics and drawings purporting to explain the events of April 2, 2023. *See id.* at 23-26.

GX 6025 is an article by Neil Liew titled "Exploiter Front Runs $25M From MEV Bots Using Ethereum Validator," claiming, among other things, that the validator for the alleged Exploit acted "with malicious intent." *Id.* at 40. The article contains an image of a lion feasting on another animal's bloody carcass. *Id.*

<u>Articles about other cryptocurrency cases or issues</u>. In addition to presenting similar hearsay and Rule 403 issues as those in the first bucket, these articles have no obvious relevance. These include GX 402, an article about a "crypto mixer" product that was not used in this case. *Id.* at 7. The same story reports on allegations by the U.S. government that another mixing service not used by the Peraire-Buenos—Tornado Cash—was used to launder money by a North Korean hacking group. *Id.* at 9. GX 404 is a press release by the United States Attorney's Office

announcing the indictment of Shakeed Ahmed with quotes about the office's focus on "fraud in the cryptocurrency and digital asset ecosystem." *Id.* at 28.

## ARGUMENT

The articles are inadmissible several times over. They are inadmissible hearsay (often multiple layers) without an exception. Some have no obvious relevance because they concern other cases or other technologies not at issue. And the rest, because they discuss the events of April 2, 2023, and offer often inflammatory opinions about the conduct alleged in this case, are inadmissible under Rule 403. The Court should exclude them.

**I.     The Articles Are Hearsay Without an Exception.**

If offered for their truth, the articles are hearsay without an exception. "It is axiomatic to state that newspaper articles are by their very nature hearsay evidence and are thus inadmissible if offered to prove the truth of the matter asserted." *Johnson v. Cate*, 2015 WL 5321784, at *9 (E.D. Cal. Sept. 10, 2015) (cleaned up); *see also, e.g.*, *Syracuse Mountains Corp. v. Petroleos de Venezuela S.A.*, 2024 WL 3637997, at *7 (S.D.N.Y. Aug. 1, 2024) ("The . . . articles are hearsay because they are out-of-court statements offered to prove the matter asserted, and no exception to the rule against hearsay applies."). News articles typically do not qualify for the residual exception because, "[u]nless their author is available for cross-examination, newspapers stories generally will present a blank face that gives little clue as to the reliability of the reporter's perception, memory, narration, or sincerity[.]" *In re Columbia Sec. Litig.*, 155 F.R.D. 466, 475 (S.D.N.Y. 1994); *see also, e.g.*, *McCowan v. City of Philadelphia*, 603 F. Supp. 3d 171, 180 (E.D. Pa. 2022) (opinionated article does not qualify for residual exception).

Many of the articles present "double" hearsay because they contain quotes. As the Ninth Circuit explained in *Larez v. City of Los Angeles*, newspaper articles will often present at least two levels of hearsay: statements from out-of-court declarants who are the journalist's sources and,

3

when the journalist does not testify at trial, a threshold out-of-court assertion by the journalist that the source in fact made the statement as transcribed. *See* 946 F.2d at 642 ("By attributing quotations to [a source], the reporters necessarily made the implicit statement, '[the source] said this!' As the reporters' statements were made in newspapers, they were, *a fortiori*, statements made out-of-court where they were not subject to the rigors of cross-examination."). That hearsay problem exists regardless of the purpose for which statements within the article are offered because the reporter's assertion inherently is "offered for the truth of the matter asserted: that [the source] did in fact make the quoted statement." *Id.*; *see also McMahon v. Valenzuela*, 2015 WL 7573620, at *11 (C.D. Cal. Nov. 25, 2015) ("[E]ven when the actual statements quoted in a newspaper article constitute nonhearsay, or fall within a hearsay exception, their repetition in the newspaper creates a hearsay problem." (cleaned up)).

One egregious example of double-hearsay is the quote from the Tether Representative in GX 401, which implies that Tether froze funds at the request of law enforcement. If the government seeks to establish this fact, which the Peraire-Buenos are moving to exclude for separate reasons, it cannot do so through news articles. *See* Fed. R. Evid. 802.

## II. The Articles Are Unfairly Prejudicial.

The government cannot make these articles admissible by offering them for any putative non-hearsay purpose. As an initial matter, they have zero or minimal probative value for the non-hearsay purpose the government seems likely to pursue—*i.e.*, that they are relevant to the Peraire-Buenos state of mind or knowledge because many were retrieved from the Peraire-Buenos' electronic devices. Because the articles post-date April 3, 2023, they cannot be relevant to knowledge or state of mind for the alleged wire fraud. *See Kousisis v. United States*, 145 S. Ct. 1382, 1394 n.5 (2025) ("[A] fraud is complete when the defendant has induced the deprivation of money or property under materially false pretenses."). Nor are they relevant to the Peraire-Buenos'

4

intent with respect to the alleged money laundering because they do not establish that the alleged Exploit was a crime.³  Although the articles use pejorative terms like "exploit" and "stolen," when reviewed as a set they refute this potential non-hearsay use because none even remotely suggests that the alleged Exploit was criminal.  *See generally* Ex. 4.  Indeed, GX 6025 contains screenshots of comments by people expressing their view that the Peraire-Buenos "did nothing wrong."  *Id.* at 40; *see also id.* ("So if MEV bots are taking funds by front running users and a validator just gamed the bots by literally front running them.  Wouldn't it be considered fair game?").

Even if marginally probative of this or some other issue, the articles are inadmissible under Federal Rule of Evidence 403.  These articles cover similar terrain as the government's allegations in this case and contain the authors' views (or quoted individuals' views) about how the MEV-Boost system typically functioned and how it apparently functioned in this instance.  They contain either prejudicial images of "hacker" figures or animals eating one another, as well as schematics purporting to demonstrate disputed facts about the MEV-Boost software.  As with all journalism, the stories reflect their authors' points of view and their individual judgment about which facts to include, which to credit, and which to undermine.  It would be unfairly prejudicial to the Peraire-Buenos to provide the jury with news stories from absent journalists whose recollections, opinions, and biases cannot be tested through cross-examination.  Should the articles be admitted for any purpose, the Peraire-Buenos will have to refute not only the allegations in the government's case, but also those that appear in the reporting.  The need to defend two cases at once is deeply prejudicial to the Peraire-Buenos, and it threatens to derail what already is anticipated to be a complex trial.

---

³ The articles and press releases concerning other cryptocurrency cases have no obvious relevance and thus are excludable under Rule 401.  *See* Ex. 4 at 28, 34.

5

## CONCLUSION

For the foregoing reasons, the Court should exclude at trial the articles and press releases at Exhibit 4 to this motion.

Date: August 22, 2025

By: */s/ Katherine Trefz*

Katherine Trefz (*pro hac vice*)
Daniel Shanahan (*pro hac vice*)
Patrick J. Looby (*pro hac vice*)
Williams & Connolly LLP
680 Maine Avenue SW
Washington, DC 20024
Tel: (202) 434-5000
ktrefz@wc.com
dshanahan@wc.com
plooby@wc.com

Jonathan P. Bach
Shapiro Arato Bach
1140 Avenue of the Americas
17th Floor
New York, NY 10036
Tel: 212-257-4897
jbach@shapiroarato.com

*Counsel for Defendant
James Peraire-Bueno*

Respectfully submitted,

By: */s/ Daniel N. Marx*

Daniel N. Marx
William W. Fick (*pro hac vice*)
Fick & Marx LLP
24 Federal Street, 4th Floor
Boston, MA 02110
Tel: 857-321-8360
dmarx@fickmarx.com
wfick@fickmarx.com

*Counsel for Defendant
Anton Peraire-Bueno*

6

## CERTIFICATE OF SERVICE

      I hereby certify that on August 22, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record in this matter who are on the CM/ECF system.

*/s/ Katherine Trefz*
Katherine Trefz