# Exhibit E



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

August 29, 2025

<u>**BY EMAIL**</u>
William Fick, Esq.
Daniel Marx, Esq.
Fick & Marx LLP
*Counsel for Anton Peraire-Bueno*

Katherine Trefz, Esq.
Daniel Shanahan, Esq.
Patrick Looby, Esq.
Williams & Connolly LLP
*Counsel for James Peraire-Bueno*

Re:     ***United States v. Peraire-Bueno, et al.*, S1 24 Cr. 293 (JGLC)**

Dear Counsel:

We write in response to your August 13, 2025 expert notification regarding defense-designated experts (the "Expert Notice"). For the reasons set forth below, the Expert Notice does not comply with Rule 16's requirement that the Expert Notice must provide "a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief," "the bases and reasons for them," and "the witness's qualifications." *See* Rule 16(b)(1)(C)(iii). These deficiencies undermine the Government's ability to challenge the admissibility of the proffered experts' testimony and to prepare for trial. Accordingly, the Government requests that the defendants supplement their expert disclosures to address the deficiencies identified below.

**<u>Mr. Kevin Madura</u>**

First, the Expert Notice states that Mr. Madura will rely "on his education, training, and experience." Please identify the portions of Mr. Madura's "education, training, and experience" that inform each proffered opinion. Please also identify what education, experience, or training, if any, Mr. Madura had related to sandwich trading or the MEV-Boost system prior to his engagement in this matter.

Second, to the extent Mr. Madura relied upon any other documents in forming his opinions other than those specifically identified in the Expert Notice, including documents from Rule 16 discovery in this case, please identify those documents and any relevant Bates numbers, docket numbers, URLs, or other identifiers. Please also disclose whether Mr. Madura interviewed James Peraire-Bueno, Anton Peraire-Bueno, or any other individual in connection with his work. If so, please identify the date of any such interview, and provide the corresponding notes and/or the substance of any information given to Mr. Madura that was provided by the defendants (either

directly or indirectly, for example, through counsel). In addition, please disclose whether Mr. Madura reviewed or relied on the defendants' statements, documents, or other information containing the defendants' statements (collectively, the "Defendants' Source Material"), in connection with his work. If so, please identify the Defendants' Source Material relied upon by Mr. Madura.

Third, the Expert Notice with respect to Mr. Madura is insufficient because it does not adequately identify Mr. Madura's opinions or the bases for them. For example:

- The Expert Notice states that the defendants' Omakase code's "use of various programs in this manner is very similar to other MEV-seeking entities," such as sandwich traders, without stating the basis for that opinion, including the basis for Mr. Madura's opinion on how sandwich traders or "other MEV-seeking entities" operate.

- The Expert Notice states that digital signatures "do[] not extend guarantees about other actions, communications, or exchanges of information outside of that particular signature" without stating the basis for that opinion.

- The Expert Notice states that, upon receiving the defendants' invalid block, the relay "can reject the incoming SignedBlindedBeaconBlock as invalid and return an error code; or, it can proceed with revealing the underlying transactions to [the defendants]" without stating the basis for that opinion.

- The Expert Notice states that the defendants' Omakase code "follows the same methodology as all MEV-seeking entities do: collect and order transactions in a certain way to optimize profit for the validator" without stating the basis for that opinion, including the basis for Mr. Madura's expertise as to how "all MEV-seeking entities" operate.

- The Expert Notice states that the defendants' block was constructed "the same way that other miners and validators have constructed blocks to their benefit hundreds of thousands of times before" without stating the basis for that opinion.

- The Expert Notice states that "[w]hen constructing a block, validators are free to order transactions in blocks in any way they wish, as long as the transactions included in the block are valid" without stating the basis for that opinion.

**Professor Brett Falk**

First, the Expert Notice states that the "basis of Dr. Falk's opinions in this matter include his academic work and experience, and the materials cited in Appendix C." Please identify the portions of Professor Falk's "academic work and experience" that inform each proffered opinion. Please also identify what education, experience, or training, if any, Professor Falk had related to sandwich trading or the MEV-Boost system prior to his engagement in this matter.

Second, the Expert Notice lists seven "Legal Documents" upon which Professor Falk relied for his opinions. Please also disclose whether Professor Falk interviewed James Peraire-Bueno, Anton Peraire-Bueno, or any other individual in connection with his work. If so, please identify the date of any such interview, and provide the corresponding notes and/or the substance of any information given to Professor Falk that was provided by the defendants (either directly or indirectly, for example, through counsel). In addition, please disclose whether Professor Falk reviewed or relied on the Defendants' Source Material, in connection with his work. If so, please identify the Defendants' Source Material relied upon by Professor Falk.

Third, the Expert Notice with respect to Professor Falk is insufficient because it does not adequately state Professor Falk's opinions or the bases for them. For example:

- The Expert Notice states that "[s]lashing is not a moral judgement on the validator" without stating the basis for that opinion.

- The Expert Notice refers to "[n]orms and [p]seudonymity" of Ethereum users without identifying what those norms are or the basis for concluding that they are standard across the industry.

- The Expert Notice states that "according to the Ethereum protocol, the Defendants had the exclusive right to propose in that particular slot because they were the chosen proposer in that slot," without stating the basis for that opinion.

- The Expert Notice states that "[a]ll transactions included in the block that the Defendants built . . . were valid" without stating the basis for that opinion.

- The Expert Notice states that "within the Ethereum protocol it is impossible to guarantee that a transaction in a block will not execute if a subsequent transaction fails to execute" without stating the basis for that opinion.

- The Expert Notice states that the "Defendants' trading strategy is best understood as a clash between two highly sophisticated adversarial entities" without stating the basis for that opinion.

## Professor S. Matthew Weinberg

First, the Expert Notice states that Dr. Weinberg's opinions are based on his "education and training . . . and on review of the materials listed in the Appendix to this disclosure." Please identify the portions of Professor Weinberg's "education and training" that inform each proffered opinion. Please also identify what education, experience or training, if any, Professor Weinberg had related to sandwich trading or the MEV-Boost system prior to his engagement in this matter.

Second, the Expert Notice lists fourteen "Case Materials" that Professor Weinberg reviewed in forming his opinions. Please also disclose whether Professor Weinberg interviewed James Peraire-Bueno, Anton Peraire-Bueno, or any other individual in connection with his work. If so, please identify the date of any such interview, and provide the corresponding notes and/or

the substance of any information given to Professor Weinberg that was provided by the defendants (either directly or indirectly, for example, through counsel).  In addition, please disclose whether Professor Weinberg reviewed or relied on the Defendants' Source Material, in connection with his work.  If so, please identify the Defendants' Source Material.

Third, the Expert Notice with respect to Professor Weinberg is insufficient because it does not adequately state Professor Weinberg's opinions or the bases for them.  For example:

- The Expert Notice states that "[s]lashing is not a moral judgment or reflective of the Ethereum user community's views on the legality of the behavior that led to the slashing" without stating the basis for that opinion.[1]

- The Expert Notice states that "[n]othing in the MEV-Boost protocol prevents a validator from submitting an authentic signature to obtain the relay's block and subsequently equivocating by signing and proposing a block of its own construction" without stating the basis for that opinion.

- The Expert Notice states that "alleged Exploit was consistent with the Ethereum and MEV-Boost protocols," noting that "the MEV-Boost relay code . . . was publicly visible."  Please identify if there is any other basis for the opinion that the "alleged Exploit was consistent with the Ethereum and MEV-Boost protocols," beyond that the MEV-Boost relay code was publicly visible.

- The Expert Notice states that the "alleged Lure Transactions did not and could not have conveyed any meaning to the searchers or any other Ethereum user because the Lure Transactions were simply transactions pending in the mempool" and that the "alleged False Signature was not false, because digital signatures in MEV-Boost program [sic] convey no meaning other than identifying the particular validator" without stating the bases for these opinions.

**Professor Andrea Eisfeldt**

The Expert Notice states that "the basis for Dr. Eisfeldt's opinions in this matter are her experience, expertise, academic teaching, academic research, and the materials cited in Appendix C."  Please identify the portions of Professor Eisfeldt's "experience, expertise, academic teaching, [and] academic research" that inform each proffered opinion.  Please also identify what experience or training, if any, Professor Eisfeldt had related to sandwich trading or the MEV-Boost system prior to her engagement in this matter.

---

[1] Please also disclose whether Professor Falk and Professor Weinberg communicated with each other—and the content of any such communications—in forming their opinions, including the shared opinion, drafted in identical language, that "slashing is not a moral judgment."  *See* Expert Disclosure as to Brett Hemenway Falk ¶ 13; Expert Disclosure as to S. Matthew Weinberg ¶ 4.

Second, the Expert Notice lists five "Legal Documents" that Professor Eisfeldt reviewed in forming her opinions.  Please also disclose whether Professor Eisfeldt interviewed James Peraire-Bueno, Anton Peraire-Bueno, or any other individual in connection with her work.  If so, please identify the date of any such interview, and provide the corresponding notes and/or the substance of any information given to Professor Eisfeldt that was provided by the defendants (either directly or indirectly, for example, through counsel).  In addition, please disclose whether Professor Eisfeldt reviewed or relied on the Defendants' Source Material, in connection with her work.  If so, please identify the Defendants' Source Material.

Third, the Expert Notice with respect to Professor Eisfeldt is insufficient because it does not adequately state Professor Eisfeldt's opinions or the bases for them.  For example:

- The Expert Notice states that "a [trading] strategy that consistently results in substantial profits generally requires extensive preparation" without stating the basis for that opinion.

- The Expert Notice, without defining "market manipulation," states that Coinbase describes sandwich trading as a "form of market manipulation."  Please clarify the meaning of "market manipulation" in this opinion and whether Professor Eisfeldt would testify to this opinion as her own or whether she is merely conveying the contents of the cited Coinbase document in footnote 7.  Please also provide the publication date of the Coinbase document.

- The Expert Notice states that the "ex-post examination of disruptions [of systems like Ethereum] . . . is a valuable and necessary process" for their development without stating the basis for that opinion.

The Government respectfully requests that the defense provide supplemental disclosures sufficient to comply with Rule 16 by no later than September 4, 2025.


Very truly yours,

JAY CLAYTON
United States Attorney


by: _____/s/_____
Danielle Kudla / Jerry Fang / Ben Levander
Assistant United States Attorneys
(212) 637-2304 / -2584 / (914) 993-1930