

William W. Fick
TEL: 857-321-8360
FAX: 857-321-8361
WFICK@FICKMARX.COM

October 3, 2025

**By ECF**
Hon. Jessical G.L. Clarke
United States District Court
Southern District of New York

    Re:    *United States v. Anton Peraire-Bueno et al.*, No. 24 Cr. 293 (JGLC) (S.D.N.Y.)

Dear Judge Clarke:

    Defendants Anton Peraire-Bueno and James Peraire-Bueno respectfully submit this response to the government's letter dated October 1, 2025 ("Ltr.," ECF 165). In the guise of requesting "clarification," the government seeks to undermine this Court's decision denying the government's motion to exclude evidence or argument that the victims engaged in "inappropriate trading strategies" ("Order," ECF 163, at 9-10), and asks the Court to exclude some of the most probative evidence necessary to confront the government's witnesses and to present a full and fair defense.

    As the Court recognized in its Order, evidence about the place of sandwich attacks in the trading environment is key to the jury's evaluation of the government's charges. Order at 9-10 (defendants are "entitled to present evidence on how sandwich attacks occur and their place in the Ethereum ecosystem"). This evidence is central to the Peraire-Buenos' intent because it presents an accurate depiction of the unique environment on Ethereum that shaped the relevant players' understandings regarding what trading strategies were permissible there. Notably, the 3500 material for CW-1 is replete with statements that he did not believe there was anything unlawful about Omakase, the trading strategy that he and the Peraire-Buenos designed and executed, based on his understanding of the place of sandwich attacks in the environment—*i.e.*, that they were unsavory but tolerated—and the existence of and reception of the Salmonella counterstrategy. *See* 3501-001 at 2; 3501-002; 3501-006; 3501-009 at 2; 3501-001 at 2; 3501-002; 3501-006; 3501-009 at 2; 3501-023. The targeted evidence does not come close to victim-blaming or any other improper defense and does not present the risk of a mini-trial on a collateral issue.

Negative Views of Sandwiching

    The government's broad request "to preclude evidence and argument that some market participants viewed sandwich trading negatively or that sandwich trading was 'controversial,'" Ltr. at 1-2, would deny the jury critical context while artificially and prejudicially sanitizing the evidence. As an initial matter, the Peraire-Buenos do not anticipate that any testimony on this topic will be lengthy or inflammatory in any way. Rather, the evidence is likely to be elicited in limited fashion during cross-examination of the government's witnesses in ways directly relevant to their testimony based on their own prior statements.

    The government is wrong to suggest that this evidence is only relevant to a victim-blaming, "Robin Hood," or "anything goes" defenses—which the Peraire-Buenos will not pursue. Rather, the evidence provides key context for the events in this case, which occurred in a rapidly-evolving decentralized market environment where traders devised new and innovative strategies to pursue "**MEV**" — that is, to *Maximize*

Hon. Jessica G.L. Clarke
October 3, 2025
Page 2 of 4

*Extractable Value* from their activity "by including, excluding, or changing the order of transactions during the block production process."[1] Such strategies were frequently adversarial, with traders competing to outsmart and "one-up" each other within the bounds of relevant protocols. Sandwich trading became one popular MEV strategy, but it was controversial. Market participants denounced sandwich attacks, and some mounted counterstrategies intended to maximize extractable value by thwarting the sandwichers.

This evidence, therefore, is essential to telling the story of the alleged conduct and to evaluating the Peraire-Buenos' intent. This is not a situation where clearly established norms, rules, or laws were being violated by sandwichers or those trying to thwart them, and where the Peraire-Buenos joined in despite it being obviously wrong. Instead, the sandwiching and counter-sandwiching occurred in the open, neither the relevant trading platforms nor any other authority intervened, and the conduct had never been charged criminally. The Peraire-Buenos' defense is not that it is lawful to defraud a person engaged in unsavory activity like sandwiching. Their defense is the opposite—that neither sandwiching nor strategies to counter sandwiching, even if viewed as adversarial or unsavory, were not regarded as illegal or deceptive, and the relevant players would not have thought of either strategy that way.

Salmonella

The "Salmonella" counterstrategy (including related variants or progeny) was one prominent collection of efforts to thwart sandwichers, and it is directly relevant here. Contrary to the government's inaccurate assertions at the recent hearing, Tr. at 107-08, Salmonella or its progeny affected Savannah Technologies (Victim-1) (not only "unrelated [sandwich] attackers"). The use of those counterstrategies was followed and discussed in real time by the Peraire-Buenos, the government's witness from Flashbots, and others in the small Ethereum community.

The evidence will establish that Salmonella informed the ways in which key players devised, participated in, and perceived the events underlying this case and their understanding of what is permissible and should be anticipated in the Ethereum ecosystem. At the time, the Flashbots witness effusively praised the Salmonella attacks on sandwichers. As CW-1 told the government, his prior knowledge of Salmonella was one of the main reasons why the team believed Omakase was not unlawful or even an "exploit." The Peraire-Buenos must be permitted to elicit these relevant facts and/or confront government witnesses about the witnesses' prior statements about them.

The relevance of Salmonella to this case is not hypothetical or a post-hoc theory conjured for trial. Salmonella and its variants were not just a precursor to the events in this case; they were the actual inspiration for the Peraire-Buenos' trading strategy. Tellingly, several of the Slack channels for Omakase, which the government will present to the jury, were originally called "Salmonella":

> james  omakase
> has renamed the channel from 'salmonella' to 'omakase'                    Jan 8th, 2023 at 1:21 PM
>
> james  omakase-trigger
> has renamed the channel from 'salmonella-trigger' to 'omakase-trigger'    Jan 8th, 2023 at 1:21 PM
>
> james  omakase-unblinding
> has renamed the channel from 'salmonella-unblinding' to 'omakase-unblinding'  Jan 8th, 2023 at 1:21 PM

---

[1] "What is MEV," *available at* https://chain.link/education-hub/maximal-extractable-value-mev.

Hon. Jessica G.L. Clarke
October 3, 2025
Page 3 of 4

In addition, the name of the Omakase smart contract was SalmonellaArb (this never changed):



Thus, evidence about Salmonella is critical "background for the events alleged in the indictment" that will "enable the jury to understand the complete story of the crimes charged." Order at 9.

It also bears on the Peraire-Buenos' intent. The government contends sandwiching is legal, and the Peraire-Buenos will not argue otherwise. Further, at the Final Pretrial Conference, the government stated Salmonella was "not an exploit of any kind." Tr. at 108. Yet it will argue that Omakase was an "exploit," and that this characterization somehow proves the Peraire-Buenos committed wire fraud (or conspired to launder money). It is not clear how the government has any basis to claim that one was an "exploit" and one was not; it has noticed no expert testimony on the strategy, even though CW-1 described Salmonella as relevant to the group's strategy as early as June of 2024. The government may argue that the particular means the Peraire-Buenos chose to thwart the sandwichers crossed the line from fair competition into fraud because it satisfies the elements of the wire fraud statute. But in evaluating the Peraire-Buenos' intent, whether they made any misrepresentation, and whether it was material, the jury needs to understand the Salmonella strategy that informed the alleged conduct and the parties' understandings of the permissible bounds of competition.

The defense will not use evidence about Salmonella to argue that Savannah was careless or negligent. But David Yakira's awareness of Salmonella attacks (his own bots having been affected) is also relevant to impeach his anticipated testimony about Savannah's understanding and expectations, and his answers to any hypothetical questions the government may be permitted to pose to him, all of which are probative of whether any material misrepresentations were made.

Finally, where, as here, the government will be permitted to present evidence and testimony about the Peraire-Buenos' awareness and understanding of completely unrelated "hacks and exploits" (Order at 6-7), its request to exclude evidence about Salmonella (a directly related strategy that actually informed the understanding of the participants in this alleged "Exploit") is ironic. It would be unfair and inconsistent to admit the government's Rule 404(b) evidence but to exclude evidence concerning Salmonella.

<u>News Articles</u>

The government concedes that if the Court admits evidence of the defendants' knowledge of certain news articles and other public documents, that "parallel defense evidence may be admissible." Ltr. at 3. The defense is not yet in a position to identify such exhibits beyond the relevant portions of the government's exhibits, especially those that may be offered on cross examination, but will confer with the government and endeavor to identify disputed issues in advance in order to address them efficiently with the Court.

Hon. Jessica G.L. Clarke
October 3, 2025
Page 4 of 4

                                        Respectfully submitted,

By: */s/ William Fick*              By: */s/ Katherine Trefz*
Fick & Marx LLP                     Williams & Connolly LLP
*Counsel for Defendant*            *Counsel for Defendant*
*Anton Peraire-Bueno*              *James Peraire-Bueno*

cc:      All Counsel of Record (by ECF)