LAW OFFICES

WILLIAMS & CONNOLLY LLP®

PATRICK J. LOOBY
(202) 434-5150
plooby@wc.com

680 MAINE AVENUE SW
WASHINGTON, DC 20024
202.434.5000
WWW.WC.COM

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

October 20, 2025

<u>Via ECF</u>
The Honorable Jessica G. L. Clarke
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl St., Courtroom 11B
New York, NY 10007

      Re:    *United States v. Anton Peraire-Bueno, et al.*, 24 Cr. 293 (JGLC) – Defendants' Objections to Government's Revised Scheme to Defraud Instruction (ECF 182)

Dear Judge Clarke:

      Defendants Anton and James Peraire-Bueno respectfully submit this letter to state their objections to the government's proposed additions to the scheme-to-defraud instruction (ECF 182). For the following reasons, the Court should reject items 1, 3, 6, and 7 in the government's laundry list of new alleged misrepresentations. Only items 2, 4, and 5, which effectively restate the alleged Lure Transactions and False Signature, may be properly included, and the Court should defer on the precise wording appropriate to capture them until the close of evidence.

      **Background**. At the October 8, 2025 hearing, the Court indicated that it was inclined to grant the defense's request to include in its instructions the specific misrepresentations (or actions that equate to misrepresentations because they conveyed false meanings and/or generated false impressions) that the government claims were fraudulent. *See* 10/8/25 Hr'g Tr. 12, 19. As the Peraire-Buenos explained, this specificity is necessary because the government alleges novel misrepresentations—*i.e.*, trades pending on a decentralized cryptocurrency network (the alleged Lure Transactions) and a digitally signed "blockheader" conveyed to the Ultrasound relay (the alleged False Signature). In this novel context, the jury's application of the material misrepresentation element to the facts becomes impossible if the jury is confused as to what steps in the alleged fraud scheme even constitute the alleged misrepresentations. *See id.* at 12.

      The Court also indicated that it was inclined to revise its draft instruction (Court Exhibit 4) to capture the concept of deceptive conduct but only where an instance of conduct "creates a false impression as to a material fact or matter." *Id.* at 11. The Court asked defense counsel whether specifying the misrepresentations/actions in the instructions would alleviate the defense's concern about including the deceptive conduct concept, and the defense agreed in substantial part. *See id.*

WILLIAMS & CONNOLLY LLP®

October 20, 2025
Page 2

at 12-13.[1]  In response to the government's argument that it should not be limited to the two alleged misrepresentations in the Indictment, the Court observed that it did "not know what else [the government was] talking about." 10/8/25 Hr'g Tr. 18. The Court ordered the government to provide proposed language identifying any further falsehoods by October 16.

**Argument**.  The government's filing flouts the purpose of the Court's Order in multiple respects and, if adopted, threatens jury confusion, unfair prejudice, and wrongful convictions.

*First*, the new items in the seven-item list are not what the Court requested—*i.e.*, discrete alleged misrepresentations, half-truths, and/or conduct that conveyed misleading meanings. Rather, to the extent the defense can discern, the items appear to be steps that the Peraire-Buenos supposedly took in the alleged scheme. Take items 6 and 7, for example, which are "switching out the bait transactions with different transactions" and "[s]ubmitting the doctored block." According to the government's allegations, these steps could not have created any false impression. Step 6 is not alleged to have been observed by anybody. And step 7 did not involve any alleged falsehood because it was merely the act of proposing a valid block to the chain. To be sure, the government contends that the Peraire-Buenos stole cryptocurrency through steps 6 and 7, but that does not make those actions misrepresentations or their "conduct" equivalents. For actions to be misrepresentations under the wire fraud statute, the actions themselves must be materially

---

[1] The Peraire-Buenos maintain that the Court should adopt either their initial proposed instruction, ECF 154 at 23-31, or the version in Court Exhibit 4 with the Peraire-Buenos' minor proposed edits. *See* ECF 168. But the Peraire-Buenos recognize that the Court has indicated that it will revise Court Exhibit 4 to include the half-truth theory and to include the concept of deceptive conduct. *See* 10/8/25 Hr'g Tr. 19. At a minimum, if the Court includes those concepts, it should do so by defining them as examples of "false pretenses, representations, or promises" rather than through modifying the government's proposed language that suggests that fraudulent "conduct" is an independent basis for a conviction separate from "false pretenses, representations, or promises."

Retaining the "false pretenses, representations, or promises" (often shorthanded as "misrepresentation") framework but defining it to include half-truths or non-verbal actions that generate a misleading impression would be more consistent with Second Circuit law as set forth in *United States v. Connolly*, 24 F.4th 821 (2d Cir. 2022). *Connolly* assessed whether non-verbal communications—submissions of supposedly incorrect data—"constituted statements that were false, half-truths, or fraudulent omissions." *Id.* at 834. This approach would also be consistent with the spoofing cases in which the Seventh Circuit held that deceptive trades were functionally half-truths, which it defined as a form of omission rather than as a form of deceptive conduct falling outside of the misrepresentation/omission framework. *See, e.g.*, *United States v. Chanu*, 40 F.4th 528, 541 (7th Cir. 2022). *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148 (2008), is not to the contrary because its observation that "[c]onduct itself can be deceptive," *id.* at 158, concerned the "scheme liability" theory for securities fraud that "imposes liability . . . even absent a public statement," *id.* at 159-60. And courts have recognized that the securities fraud statute is broader than the wire fraud statute because the latter is limited to misrepresentation-based fraud. *See, e.g.*, *United States v. Royer*, 549 F.3d 886, 900 (2d Cir. 2008).

WILLIAMS & CONNOLLY LLP®

October 20, 2025
Page 3

misleading. *See Williams v. Affinion Grp., LLC*, 889 F.3d 116, 125-26 (2d Cir. 2018). In *Williams*, the Court rejected the similar contention that actions merely taken during an allegedly deceptive fraud scheme (*i.e.*, "fraudulent tactic[s]") could satisfy the material misrepresentation element where the actions themselves were "not inherently fraudulent." *Id.* To see why these steps cannot be fraudulent, consider how the materiality inquiry would apply to the action in step 6—the "doctoring" of the block. What was false or misleading about that? Who was the audience for that alleged falsehood? Would anything false about the "doctoring" have made the action's viewer change its behavior? These questions are impossible to answer because item 6 is self-evidently not a misrepresentation (or half-truth, or action that conveys a false message), let alone a material one. The same problems inhere to the proposal of the "doctored" block in step 7.

*Second*, several of the steps are so vaguely described, and/or so contrary to the facts already established at trial, that they are inappropriate to put before the jury. Step 1—"[p]osing as an honest MEV-Boost validator"—is inadequate as a matter of law and fact. What does the government mean by "posing as an honest MEV-Boost validator"? To whom was the "posing" directed? Who was deceived?[2] When?[3] What alleged actions constituted the "posing"? And does the government mean "honest" in the colloquial sense, or "honest" in the cryptographic sense—which Mr. Miller defined as acting "according to [a protocol] specification," Tr. 282 (direct), and "doing what we might expect within a distributed system," Tr. 452 (cross). If the government means "honest" in the colloquial sense, then the allegation has no content because it merely states the tautology that the Peraire-Buenos allegedly committed fraud by being dishonest. If the government means "honest" in the technical sense, then the step purports to criminalize the violation of a technical specification of a private blockchain protocol—an audacious fraud theory that would not have survived a Rule 12 motion if it had been alleged in the Indictment. *See United States v. Finnerty*, 533 F.3d 143 (2d Cir. 2008). In *Finnerty*, the Second Circuit held that the mere violation of NYSE rules did not amount to fraud and rejected a similar argument that the defendant committed fraud by "holding himself out as a specialist obligated to follow NYSE rules" where there was no evidence that he promised his clients that he would follow the rules. *Id.* at 149-51. There has been no evidence, and there will not be any, that validators generally agree (or the Peraire-Buenos agreed) to be "honest" validators under the technical definition. *Finnerty*, moreover, concerned a highly regulated industry where it would be reasonable for clients to assume rule compliance, but even then, a mere assumption was insufficient. Here, as Mr. Miller testified, the only reasonable assumption is the opposite—*i.e.*, that validators act "rationally and

---

[2] It couldn't be the alleged victims because they never interacted with (or "saw," if a bot can do that) the validator. And it couldn't be the relay because that bot also never observed the validator "posing" in any way. In this digital context, the term "posed" has no discernible meaning.

[3] To the extent the government places this "posing" step at the time of the validator's registration with relays, Mr. Miller testified that the registration step only provides the relay in advance with information necessary for the validator to get paid *if* the validator later accepts a block from the relay, but there is "nothing in th[e] registration message that requires a validator to accept a block from a relay." Tr. 403. So defined, this message could not be a material misrepresentation.

WILLIAMS & CONNOLLY LLP®

October 20, 2025
Page 4

not honestly, as [he] defined the term." Tr. 453. This theory is also contrary to the government's proposed instruction that the violation of protocols does not equate to fraud. *See* ECF 154 at 39.

Step 3—"[m]isleadingly requesting a block from the relay for validation"—also has already been refuted within the government's case. The government presumably means the "get header" call, which is a request for information that anybody (not just validators) can send to a relay and which prompts the same information to be conveyed in return regardless of the identity or purpose of the requestor. *See* Tr. 432-33. This automated call and response cannot have been misleading.

*Third*, the actions are either entirely new (steps 1 and 3) or are being identified as misrepresentations or misrepresentation-equivalents for the first time (steps 6 and 7). As of last week, the Peraire-Buenos shared the Court's uncertainty regarding "what else [the government was] talking about." 10/8/25 Hr'g Tr. 18. They had no notice whatsoever that the government would claim that it is fraud to deviate from a technical protocol specification (step 1), to register with the relay (step 1, perhaps), or to call "get header" (step 3). And it was not obvious (and indeed remains unclear) how the post-unblinding actions (steps 6 and 7) could be independent bases for a fraud conviction. This significant mid-trial development—long after the motion to dismiss, motion *in limine*, exhibit list, and expert disclosure deadlines—puts the Peraire-Buenos in the untenable position of having to rebut new theories on the fly and should be rejected as a matter of fairness and to prevent either a constructive amendment of the Indictment or prejudicial variance.

Step 1, depending on how it is interpreted, states a startling new theory of fraud-by-protocol-deviation that the government previously disavowed. *See* ECF 146 at 13 n.9 ("[T]he Indictment's wire fraud charges are not premised on the defendants' violations of MEV-Boost's rules, norms, or protocols, but on their own misrepresentations"); *id.* at 8 (arguing that the Peraire-Buenos "misunderstand the nature of the wire fraud charged in the Indictment, which alleges that the defendants used misrepresentations (*i.e.*, the 'bait' transactions, in conjunction with the False Signature, which misrepresented the defendants' commitment to publish the block as structured) as part of a unified fraud scheme to obtain money or property from the Victim Traders"). The government cannot defeat motions to dismiss and motions *in limine* by disavowing theories that it attempts to resurrect through proposed jury instructions in the middle of its case. Nor is there any plausible claim that this theory was alleged in the Indictment, which does not use the term "honest validator" and does not specify any protocol deviation as a fraudulent act. *See generally* ECF 70.

In sum, for a combination of the above reasons, items 1, 3, 6, and 7 on the government's list—*i.e.*, all of the "new" items that reach beyond the two misrepresentations in the Indictment—are inappropriate for inclusion in the jury instructions.

As for the remaining items that purport to restate the alleged Lure Transactions and False Signature—*i.e.*, items 2, 4, and 5—the Court should defer on the wording until the close of evidence. For now, the Peraire-Buenos observe that the government's proposed formulations are improper for several reasons. First, they are unnecessarily argumentative for a jury instruction. Item 2, for example, could be phrased as "use of bait transactions" without the rhetorical flourish

WILLIAMS & CONNOLLY LLP®

October 20, 2025
Page 5

"targeted at the victim traders." In other respects, they are unnecessarily confusing. Item 4, for example, should at a minimum be modified to omit "and cause [the block] to fail" because that is merely *a downstream consequence* of the alleged "false data" and not itself a misrepresentation. The inclusion of that "consequence" would confuse the jury's materiality inquiry which should be focused on whether any alleged *falsity* was material to the decision-maker (here, for item 4, the relay), not on what the alleged misrepresentation later caused to happen. And it is unclear why the alleged False Signature has been broken into two separate misrepresentations that do not mention the signature. Neither half of the new formulation—items 4 or 5—makes much sense on its own. The government's theory (as far as it can be discerned) has always been that the alleged False Signature was a promise to publish the relay's block. Item 5 comes closest to articulating that theory, but its separation from item 4 makes it unclear what work item 4 does. Does the government contend that item 4 is a stand-alone misrepresentation that conveyed a false meaning, or is it merely a step that the Peraire-Buenos allegedly took that made their trading strategy possible? If the latter, the step should not be included a list of the misrepresentations (or their equivalents) that were allegedly misleading. Ultimately, the Court can defer ruling on the precise language until the charge conference when the record perhaps will provide some needed clarity on what the government believes was fraudulent about what it formerly called the False Signature.

Finally, the Court should reject the new language surrounding the seven-item list, which goes beyond the Court's requested filing.[4] The Court should also instruct that the jury needs to unanimously agree on at least one of the alleged misrepresentations. *See* ECF 168 at 3. The Second Circuit has recognized that the jury must be unanimous on "the factual basis for a conviction" where that "basis can be broken down into distinct conceptual groupings of fact," but has held that a general unanimity instruction usually will suffice to enforce that requirement. *See United States v. Schiff*, 801 F.2d 108, 114-15 (2d Cir. 1986) (cleaned up). But it has also noted that a general unanimity instruction may be insufficient "in cases where the complexity of the evidence or other factors create a genuine danger of jury confusion." *Id.* This exceedingly complex case is the epitome of one where there is a genuine danger of jury confusion warranting a specific unanimity instruction. Such an instruction would be even more warranted if the Court includes some or all of the government's new alleged "falsehoods."

Respectfully submitted,

By: /s/ William Fick
Fick & Marx LLP
*Counsel for Defendant*
*Anton Peraire-Bueno*

By: /s/ Patrick J. Looby
Williams & Connolly LLP
*Counsel for Defendant*
*James Peraire-Bueno*

---

[4] The two non-numbered paragraphs are problematic in various ways, including by leaving the list of misrepresentations open-ended and by inaccurately suggesting that pretenses, half-truths, concealment of material facts, and deceptive conduct are all independent categories of things that can constitute material misrepresentations. *See supra* n.1. Moreover, the Court should not include "concealment of material facts" because that is merely the disavowed omission theory.